**Thomas DANIELS, Jr., Plaintiff,**

v.

**DILMAR OIL COMPANY, Defendant.**

**No. 80–1539.**

United States District Court,
D. South Carolina,
Florence Division.

Oct. 8, 1980.

S. Jahue Moore, Kirkland, Taylor, Wilson, Moore & Allen, West Columbia, S. C., for plaintiff.

Howell V. Bellamy, Jr., Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, Myrtle Beach, S. C., for defendant.

GEORGE ROSS ANDERSON, Jr., District Judge.

This action arises pursuant to the *Petroleum Marketing Practices Act.* The Complaint was filed with this Court on August 15, 1980 along with a Motion for a Preliminary Injunction and Supporting Memorandum. The Defendant has answered and has filed documentation with the Court in opposition to the Motion for a Preliminary Injunction.

The Motion for a Preliminary Injunction was heard before me on Monday, September 29, 1980 in Florence, South Carolina. The Plaintiff appeared at the hearing with his attorney, S. Jahue Moore, of the Lexington County Bar. Appearing on behalf of Defendant was its President, R. E. Atkinson, Jr., and its attorney, Howell V. Bellamy, Jr., of the Horry County Bar. Both Plaintiff and Defendant submitted testimony at the hearing.

Based on the testimony presented and based on the various documentation in the file, I find and conclude as follows:

I find that the Defendant is the owner of a three bay service station located on Highway 17 in Garden City, South Carolina.

I find that on April 13, 1979, Defendant leased Plaintiff the service station in question for a one year term beginning May 1, 1979.

I find that the lease purports to give broad termination powers to Defendant and provides for a month–to–month tenancy after the expiration of the original term.

I find that after signing the lease, Plaintiff took possession of the service station and operated it under the Texaco brand, buying gasoline and oil related products from the Defendant, a Texaco Jobber. Basically, therefore, I find that Defendant leased Plaintiff his business premises and also acted as Plaintiff's wholesale supplier.

I find that after leasing the service station from the Defendant, the Plaintiff borrowed a substantial sum of money and invested it in equipment and inventory for the station. Plaintiff also has made rather substantial physical improvements to the property. At present, I find that Plaintiff has approximately Thirty–Five Thousand and no/100 ($35,000.00) Dollars invested in his business, most of which he has borrowed from various sources.

I find that Plaintiff and his wife work full time in the service station and they have done an acceptable job in managing the business. I find that the income derived from the service station is Plaintiff's only source of income and the business also supports two full time employees.

I find that the property on which the service station is located is quite valuable. I find that the Defendant wishes to either sell or lease the premises in the future in order to convert the premises to a convenience store operation. I find, however, that the Defendant has no firm offer for the premises at this time although offers have apparently been made in the past.

I find that the Defendant is a rather substantial business entity and has in its network approximately thirty–five (35) stations such as that leased to Plaintiff. I find that Defendant charges Plaintiff Seven Hundred Fifty and no/100 ($750.00) Dollars per month rent for the service station which sum is admitted by Defendant to be a fair and reasonable rent for the station as it now exists. I find that in addition to rent, Defendant also makes a profit on the products it sells Plaintiff. I find that pursuant to the arrangement between the parties, Plaintiff is required to purchase all of his gasoline from the Defendant.

I find that prior to the anniversary date of the lease (April 30, 1980) no notice of termination or non–renewal was sent to Plaintiff by the Defendant and the parties continued to deal with each as they had prior to the expiration of the term. I find that on July 1, 1980, the Defendant sent the Plaintiff a certified letter notifying Plaintiff that the lease would be terminated as of October 1, 1980. No summary of the *Petroleum Marketing Practices Act* was sent along with this notice of termination. I find that the letter of July 1, 1980 was the first notice Plaintiff ever received that his lease was in danger of being terminated.

I find that subsequent to July 1, 1980, Plaintiff contracted Defendant as to the possibility of keeping the service station. I find that several conversations took place between the parties in this regard. I find that during these conversations, Plaintiff offered to attempt ·to buy the property from the Defendant but this offer was not seriously considered by Defendant. I find that during these conversations Defendant offered to lease Plaintiff the premises for the sum of Two Thousand and no/100 ($2,000.00) Dollars per month which offer was reduced to writing and mailed to Plaintiff on July 24, 1980.

I find that the proposed rent of Two Thousand and no/100 ($2,000.00) Dollars per month was not agreeable to Plaintiff and Plaintiff has brought this action claiming that the termination of his lease is being done in violation of the *Petroleum Marketing Practices Act.*

It is the conclusion of this Court that the facts of this case clearly fall within the purview of the *Petroleum Marketing Practices Act* and the lease agreement in question meets the definition of a "franchise" as the word is defined by the Act. *Blankenship v. Atlantic Richfield Co.*, 478 F.Supp. 1016 (D.Or.1979); *Gilderhus v. Amoco Oil Co.*, 470 F.Supp. 1302 (D.Minn.1979); *Frisard v. Texaco, Inc.*, 460 F.Supp. 1094 (E.D. La.1978); *Ted's Tire Service, Inc. v. Chevron U.S.A., Inc.*, 470 F.Supp. 163 (D.Conn. 1979).

█ The present issue involves the validity of the request for a Preliminary Injunction. This is not a final determination on the merits.

Section 105(b)(2) of the Act reads as follows:

"Except as provided in paragraph 3, in any action under subsection (a), the Court shall grant a preliminary injunction if–

(A) The franchisee shows—

■ the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

(ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

(B) the Court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief, will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted."

Pursuant to the above quoted section of the Act, it is not necessary for Plaintiff to make a showing of extreme hardship or irreparable harm in order to obtain an injunction. *Gilderhus v. Amoco Oil Co.* Further, Plaintiff need not show a probability of success on the merits. All that need be shown is some reasonable chance of success on the merits. *Saad v. Shell Oil Co.*, 460 F.Supp. 114 (E.D.Mich.1978).

■ It is the opinion of the Court that Plaintiff has made a sufficient showing of a reasonable chance of success on the merits. Defendant's position is that the termination has been done in good faith for the purpose of renovating or selling the premises.

The proposed new rent demanded by Defendant represented an increase of One Thousand Two Hundred Fifty and no/100 ($1,250.00) Dollars per month or approximately two hundred fifty percent (250%). Certainly, the ultimate trier of fact could find the termination effort an attempt by Defendant to exact an unfair and unreasonable rent from Plaintiff. *Gilderhus v. Amoco*; *Sexe v. Husky Oil Co.*, 475 F.Supp. 135 (D.Mont.1979). This is especially so in light of the Defendant's burden of proof.

■ Further, the grounds claimed by Defendant as a reason for termination simply are not sufficient reason for termination pursuant to section 102(b)(2) of the *Petroleum Marketing Practices Act.* As the lease is not for a term of three years and as it appears never to have been offered for a three year term, the reasons advanced by Defendant would also be insufficient reasons for non–renewal pursuant to section 102(b)(3)(D) of the Act.

In addition to the foregoing, there are serious questions raised as to the validity of the notice of termination actually given. Section 104(c)(3)(C) of the *Petroleum Marketing Practices Act* requires a summary of the Act to be furnished to the dealer along with the notice of termination. It is admitted that no summary of the Act was ever sent to Plaintiff. The validity of the Act's notice requirements has been strictly upheld and it has been determined that the Court does not have the power to cure a notice defect. *Blankenship v. Atlantic Richfield Co.*, 478 F.Supp. 1016 (D.Ore.1979).

■ For the reasons stated, the Court has found that Plaintiff has shown a reasonable chance of success on the merits. In balancing the hardships, the Court is of the opinion that the harm to Plaintiff will be great if an injunction is not issued while the harm to Defendant will be small upon the issuance of an injunction.

Without an injunction, Plaintiff would lose his only source of income; he and his wife would be placed out of work; Plaintiff would have to dispose of his inventory and equipment at a deflated price and at a substantial loss; Plaintiff would have to dismiss his employees; and Plaintiff's business would be lost. In effect, without the injunction, Plaintiff would be placed on the brink of bankruptcy.

On the other hand, the effect of an injunction would be minimal on Defendant. Business and rent would continue as usual with Defendant realizing income from the premises as well as profit on goods sold to Plaintiff. There is no imminent sale of the premises to be lost and there is no evidence that a small delay in marketing the property will devalue the property in the least.

Based on the foregoing, it is the opinion of this Court that a Preliminary Injunction should be issued.

182

IT IS THEREFORE ORDERED that the Defendant be and it hereby is Preliminarily enjoined from terminating Plaintiff's lease and the parties shall continue in business with Plaintiff in possession of the service station in question under the terms of the lease of April 13, 1979 until the further order of this Court.