**MOBIL OIL CORPORATION, Plaintiff,**

v.

**Arthur VACHON, Defendant.**

**Civ. A. No. 83–1177–N.**

United States District Court,
D. Massachusetts.

Sept. 16, 1983.

**154**

William E. Glynn, Charles Donelan, David Broughel, Day, Berry & Howard, Boston, Mass., for plaintiff.

Michael J. O'Laughlin, Bruce Keary, Keary, O'Laughlin, Olmstead & Hageman, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

This matter comes before the Court on cross-motions by the plaintiff Mobil Oil Corporation and the defendant Arthur Vachon for declaratory and preliminary injunctive relief. Jurisdiction is predicated upon the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* (hereinafter PMPA) and 28 U.S.C. §§ 1331, 1332, 1337, 2201 and 2202. A hearing on the cross-motions was held on May 18, 1983. After a careful review of the facts and controlling law in the instant case, I hereby DENY the plaintiff's request for preliminary injunctive and declaratory relief. However, pursuant to § 2805(b)(2) of the PMPA, the defendant's motion for a preliminary injunction is ALLOWED.

The plaintiff shall refrain, until further order of this court, from interfering with, altering, or discontinuing in any manner the normal and usual business arrangements which the defendants has enjoyed as a result of the Retail Dealer Contract and Service Station Lease consummated by the parties on October 2, 1979. All services which have been terminated by the plaintiff Mobil Oil Corporation shall be resumed immediately. The reasons for my legal conclusions are set forth in this memorandum of decision.

Mr. Arthur Vachon is the proprietor and operator of "Vachon's Mobil Service" located at 541 Huntington Avenue in Roxbury, Massachusetts. He has held the franchise, which is the subject of this litigation, since April 2, 1962. Prior to that date, Mr. Vachon was an employee of the predecessor franchisee. Mr. Vachon's franchise is his sole business endeavor. Mr. Vachon operates the franchise with the assistance of three employees. Mr. Vachon relates that he was informed on two occasions, prior to the dispute at bar, of Mobil's desire to sell the premises. On each of those occasions, he was given the opportunity to purchase the premises. However, Mobil, on both occasions, decided to retain ownership of the property.

On October 2, 1979, Mobil Oil Corporation and Arthur Vachon concluded a Retail Dealer Contract and Service Station Lease to commence on May 1, 1980 and to end on April 30, 1983. It was on October 16, 1982 that Mr. Vachon received a letter from Mobil Oil Corporation dated October 14, 1982. The letter stated, *inter alia:*

> Mobil has decided, in good faith, and in normal course of business, that it would like to sell the premises currently being leased to you by Mobil Oil Corporation.

Because of this determination, Mobil Oil Corporation elects to terminate our agreements pursuant to paragraph 2 of the Retail Dealer Contract and Paragraph 2 of the Service Station Lease. This determination also provides grounds for the nonrenewal of our franchise relationship under the Petroleum Marketing Practices Act. Therefore, Mobil Oil Corporation hereby gives notice that it intends to nonrenew said contract, any supplemental agreements, and franchise relationship with you effective April 30, 1983. This decision to nonrenew is final and irrevocable.

Please be advised that Mobil is currently in the process of obtaining an outside appraisal to properly evaluate the value of the subject premises. Mobil will be receiving a written confirmation of the appraisal within a few days. At such time, Mobil shall make to you, in writing a bona fide offer to sell the property, which offer shall remain open for at least 45 days. If you do not accept this offer, Mobil may proceed to sell the premises to another third party.

In addition, should Mobil receive any acceptable offers from third parties at least 45 days prior to the effective date of nonrenewal, Mobil may, at its option, grant to you a right of first refusal, which right shall remain open for 45 days. If you do not elect to purchase the property, please arrange to have your personal property removed and to surrender possession of the premises as of the effective date set out above, close of business April 30, 1983 or May 1, 1983. A copy of the summary statement of Title I of the Petroleum Marketing Practices Act prepared by the Department of Energy is enclosed.

Further, Mr. Vachon alleges that no summary of Title VI of the PMPA was enclosed in the letter. Too, he asserts that at the time he received the letter, Mobil had already conducted a review of the profitability of the franchise. Mobil had had the property appraised for re-use as a fast food restaurant. McDonald's had inquired as to the availability of the property. Mr. Va-

chon contends that a written appraisal of the property was received by Mobil on September 1, 1982. The value of the property was set at $200,000 for fast food or retail use.

Mr. Vachon claims that at no time did Mobil disclose that it had determined the franchise to be unprofitable or that the property had been appraised for re-use. Mr. Vachon states that he relied on the letter and awaited a written appraisal with an offer which was to remain open for 90 days. Approximately 120 days after the October 14 letter, Mr. Vachon received a letter dated February 11, 1983. The letter included an offer from McDonald's to pay $237,000 for the premises. Mobil in its letter of February 11, 1983 granted Vachon a right of first refusal and promised to hold the offer open for 45 days. Vachon states that he attempted, in vain, to secure more information about the McDonald offer. Finally, Pat Cochrance, an agent of the plaintiff, informed the defendant that he knew nothing about the offer from McDonald.

On March 28, 1983, the defendant (by counsel) in a letter to Mobil Oil Corporation informed them that he had "relied upon their letter of October 14, 1982 to communicate a written bona fide offer to sell based on an outside appraisal current as of October 14, 1982." The defendant asserted that "by failing to tender such an offer prior to dealing with a third party, Mobil [had] acted in bad faith...." Mr. Vachon also informed Mobil Oil Corporation of his view that they were not only in violation of its own purported notice, but that it had violated the policies and specific requirements of the PMPA.

In his letter of April 22, 1983, Vachon reiterated the points made in his previous letter and complained that Mobil's conduct was contrary to law. An April 27, 1983 letter written by counsel for Mr. Vachon informed Mobil that McDonald had obtained a renewal of its lease at 289 Huntington Avenue. Mr. Vachon argued that the lease automatically renewed itself because the notice purporting to terminate

the lease was defective. Mr. Vachon demanded that Mobil disclose the status of the offer made by McDonald. Mr. Vachon also offered Mobil $52,000 to purchase the premises. The offer was rejected by Mobil on May 3, 1983; supplies and services were terminated on April 30, 1983. Mr. Vachon continues to pay rent to Mobil Corporation and the defendant by affidavit swears that these checks have been deposited in the plaintiff's account. The cancelled checks bear witness to the truth of the preceding allegation.

Mobil Oil Corporation emphatically submits that it has fully complied with the law. However, it does not, in its court papers, controvert many of the critical factual allegations of the defendant. It disagrees with the legal conclusions reached by the defendant. The factual and legal allegations plead by the plaintiff must give us pause. The issues created by court papers filed by both parties categorically raise sufficiently serious questions going to the merits of the case and makes such questions fair ground for litigation. It is clear that the potential hardship to be suffered by the franchisee is far greater in magnitude than that which Mobil Oil Corporation might suffer. Ultimately, both parties will have their day in court. The preceding conclusions merit a discussion and analysis of the law as it applies to the case at bar.

 The standard for injunctive relief under the PMPA is found in § 2805(b)(2) which provides:

Except as provided in paragraph (3), in any action under subsection (a) of this section, the court shall grant a preliminary injunction if—

(A) the franchisee shows—

(i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

(ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

(B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

It is clear from the statute that no showing of irreparable harm is required. Even if irreparable harm were a requirement, the granting of injunctive relief would not be precluded. It has been held that the mere loss of a franchise is irreparable harm. *Stenberg v. Checker Oil Co.*, 573 F.2d 921 (6th Cir.1978), *Gilderhus v. Amoco Oil Co.*, 470 F.Supp. 1302, 1304 (D.Minn.1979); *Milsen Co. v. Southland Corp.*, 454 F.2d 363 (7th Cir.1971); *Wojciechowski v. Amoco Oil Co.*, 483 F.Supp. 109, 116 (1980). Nor does the franchisee have to show a probability of success on the merits. He need only show some reasonable chance of success on the merits. *Saad v. Shell Oil Co.*, 460 F.Supp. 114, 116 (E.D.Mich.1978). The franchisee, in the language of the statute, must present a case which raises sufficiently serious questions going to the merits of the case. The courts must also look at the balance of the hardships. If there is less hardship imposed upon the franchisor than upon the franchisee by granting the injunction, the court must consider this state of affairs in its evaluation of the necessity for injunctive relief. It is a point in the franchisee's favor. *See Gilderhus v. Amoco Oil Co., supra* at 1304; *Daniels v. Dilmar Oil Co.*, 502 F.Supp. 178, 181 (1980); *Wojciechowski v. Amoco Oil Co., supra* at 112; *Wesley v. Mobil Oil Corp.*, 513 F.Supp. 227, 231 (1981).

 In the instant case, the allegations of facts militate toward granting injunctive relief in favor of the defendant. There is not only evidence that its lease has not been renewed due to bad faith on the part of the franchisor, but that the notification provision of the PMPA has been breached. 15 U.S.C. § 2804(a) and (c) provide:

(a) Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee who is a

party to such franchise or such franchise relationship—

(1) in the manner described in subsection (c) of this section; and

(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

(c) Notification under this section—

(1) shall be in writing;

(2) shall be posted by certified mail or personally delivered to the franchisee; and

(3) shall contain—

(A) a statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefor;

(B) the date on which such termination or nonrenewal takes effect; and

(C) the summary statement prepared under subsection (d) of this section.

The franchisee alleges that notice was defective in three respects: (1) There was no summary statement of the Act in the plaintiff's letter of October 14, 1982; (2) plaintiff failed to give the franchisee a reason for nonrenewal of the relationship; and (3) Mobil failed to, within 90 days after October 14, 1982, either make a bona fide offer to sell, transfer or assign its interests in the premises to the franchisee, or to give him a right of first refusal on an offer, made by a third party, to purchase Mobil's interests in the premises. Mobil alleges that it has fully complied with the requirements of the Act and the franchisee's contentions are without merit. The Court finds that the franchisee's presentation of the facts is more compelling than that of the plaintiff, Mobil. It appears that there are serious factual and legal questions which go to the merits of the case. These issues are fair ground for litigation.

The quality of the notice given Mr. Vachon is a serious legal question to be probed in this case. On October 16, 1982, Mr. Vachon received a letter dated October 14, 1982. The essence of this letter is quoted *infra* at page 154. The substantive content of this letter is not in dispute. Mr. Vachon claims that no summary statement of the Act was included; thus, § 2804(c)(3)(C) is alleged to have been violated. Mr. Vachon states that he did not receive a summary until he was ordered to remove from the premises on April 30, 1983. Mobil asserts that the summary was included in the October 14, 1983 correspondence as indicated in the letter. Mr. Vachon further contends that § 2804(c)(3)(A) has been breached because of Mobil's failure to give explicit reasons for nonrenewal and the language used in the letter of October 14, 1982. The Court agrees that a question as to whether § 2804(c)(3)(A) has been violated is created by the use of the conditional tense in Mobil's letter. 15 U.S.C. § 2802(b)(3)(D) of the PMPA allows a termination or nonrenewal when the franchisor has made a determination, in good faith to sell the premises. The defendant contends that the statement: ... Mobil ... would like to sell the premises ... is not sufficient to constitute a "reason" within the meaning of the statute. The statement that Mobil "would like to sell the premises" is linguistically different in meaning from a statement which reveals an absolute decision or determination on the part of Mobil to sell the property as might be required by § 2804(c)(3)(A) and is certainly acceptable under 15 U.S.C. § 2802(b)(3). As the defendant argues: "A desire to sell and a good faith decision to sell are not one and the same." Nor did Mobil give reasons as to why it desired to sell the property. *See generally Davy v. Murphy Oil Corporation*, 488 F.Supp. 1013 (1980). It, too, appears that to this day no sale of the property is imminent.

It is the opinion of the Court that Mobil's letter of October 14, 1982 is an epistle of confusion. The very nature of the letter creates a serious question as to whether it could be effective notice given its potentially ambiguous and misleading character. Mobil clearly states that the defendant should vacate the premises by April 30, 1983 or May 1, 1983. However, the two paragraphs preceding the requirement of

removal create a source of potential confusion for the defendant. Firstly, Mobil promises:

"Please be advised that Mobil is currently in the process of obtaining an outside appraisal to properly evaluate the value of the subject premises. Mobil will be receiving a written confirmation of the appraisal within a few days. At such time, Mobil *shall* make to you, in writing, a bona fide offer to sell the property, which offer shall remain open for at least 45 days. If you do not accept this offer, Mobil may proceed to sell the premises to another third party."

A plain meaning of this letter might allow reasonable men to reach two conclusions: (1) Mobil agreed to make Mr. Vachon an offer to sell the property after its outside appraisal was completed; (2) and Mobil would negotiate with a third party only after Mr. Vachon had rejected its offer. Mobil does not attempt to explain away this paragraph, so heavily cited by the defendant. However, the Court finds that the paragraph when read in context creates serious issues as to the effectiveness of notice. Reasonable men might find the letter misleading. This Court is readily convinced that the letter may have mislead Mr. Vachon. Mr. Vachon understood that he would be receiving an offer. The offer was to be tendered before negotiations with a third party were to occur. Vachon claims that no such offer was forthcoming until February 11, 1983 when Mobil was in the process of negotiating with McDonald's. Whether the nature of this letter creates a situation involving defective notice is one to be decided ultimately by the legal process. However, the question is a serious one which is fair grounds for litigation.

Indubitably, if notice is defective by reason of the October 14, 1982 letter, then the defendant has never received effective notice within the meaning of § 2804(a) and (c). Consequently, Mobil's termination of services on April 30, 1983 and rejection of defendant's offer of May 3, 1983 would be in violation of § 2804(a)(2) which requires a 90 day notification of termination or nonrenewal. Defective notice is not effective notice.

■ The notice provision of § 2804(c) is to be strictly construed. In *Blankenship v. Atlantic-Richfield Co.*, 478 F.Supp. 1016 (1979), the court stated that if Congress had intended the court to have the power to cure or waive a notice defect, it would have so provided under the notice provision of § 2804. In *Blankenship*, the franchisor had not given the requisite 90 day notice. The court held:

"Thus, the defendant has failed to comply with the notice requirement and plaintiff must prevail under the Act [preliminary injunction granted]. The notice requirement is a mandatory prerequisite to defendant's nonrenewal. I have no authority to grant relief from that requirement." *Blankenship v. Atlantic-Richfield Co.*, supra at 1016.

The court in *Davy v. Murphy Oil*, 488 F.Supp. 1013, rejected a defendant's argument that "minor technical deficiencies ought not to be the basis for an injunction against termination if, at the time of termination, proper grounds exist." The court rejected the notion of *de facto* compliance with the notice requirements. *See also Daniels v. Dilmar, supra.*

The Court also finds the general conduct of Mobil, as alleged by the defendant, creates a serious question as to whether Mobil has acted in good faith by terminating or nonrenewing the defendant's franchise. Good faith conduct is clearly required by 15 U.S.C. § 2802(b)(3). *See also Munno v. Amoco Oil Co.*, 488 F.Supp. 1114 (D.C. Conn.1980); *Brach v. Amoco Oil Co.*, 677 F.2d 1213 (7th Cir.1982).

The four page Supplemental Memorandum of the plaintiff (plaintiff's reply memorandum) does nothing to remove the existence of serious questions which are fair ground for litigation. Plaintiff Mobil does not adequately respond to the defendant's allegation that the letter of October 14, 1982 is misleading. Nor does Mobil attempt to deny many of the other factual allegations which are critical to a bad faith

determination. The potential harm to defendant Vachon if he loses his franchise far outweighs that which plaintiff Mobil may suffer if Mobil is forced to allow Vachon to continue. The balance of harm favors defendant Vachon. The public interest is served by preserving a business which caters to public needs. *See Wojciechowski v. Amoco, supra* at 112. Defendant Vachon has the most to lose. He would not be able to service customers who have Mobil credit cards. These customers would comprise much of his business. He could no longer use the Mobil trademark with its attendant goodwill. *See Gilderhus v. Amoco Oil Co., supra* at 1306. The reasons stated for ordering injunctive relief in *Daniels v. Dilmar, supra* at 181 apply in the instant case:

> For the reasons stated, the Court has found that Plaintiff has shown a reasonable chance of success on the merits. In balancing the hardships, the Court is of the opinion that the harm to Plaintiff will be great if an injunction is not issued while the harm to defendant will be small upon the issuance of an injunction.
>
> Without an injunction, Plaintiff would lose his only source of income; he and his wife would be placed out of work; Plaintiff would have to dispose of his inventory and equipment at a deflated price and at a substantial loss; Plaintiff would have to dismiss his employees; and Plaintiff's business would be lost. In effect, without the injunction, Plaintiff would be placed on the brink of bankruptcy.
>
> On the other hand, the effect of an injunction would be minimal on Defendant. *Business and rent would continue as usual with Defendant realizing income from the premises as well as profit on goods sold to Plaintiff. There is no imminent sale of the premises to be lost and there is no evidence that a small delay in marketing the property will devalue the property in the least.*

Consequently, applying the relaxed standard for preliminary injunction under the PMPA, Mobil must lose. The court must constantly bear in mind the purpose of the PMPA: It is to protect franchisees from the unfair practices of the petroleum industry. It was enacted in 1978 by Congress to shelter the weak franchisees from the slings and arrows of outrageous industrial petroleum giants. In *Davy v. Murphy Oil Co., supra* at 1015, the court stated:

> The Act was enacted in 1978 in order to establish "minimum federal standards governing the ... nonrenewal of franchise relationships for the sale of motor fuel by the franchisor or the supplier of such fuel." (1978) U.S.Code Cong. & Admin.News, p. 873. [In other words, the Act is designed to protect franchise distributors and retailers of gasoline against arbitrary or discriminatory termination or nonrenewal of franchises. See *Gilderhus v. Amoco Oil Co.*, 470 F.Supp. 1302 (D.C.Minn.1979).] Therefore, this Court concludes that the primary purpose of the Act is for the protection and the benefit of franchisees against arbitrary acts of franchisors recognizing the disparity of bargaining power of the parties.

In sum, the standard for preliminary injunction is relaxed under the PMPA. There must exist serious questions which are fair ground for litigation; there must be a reasonable chance for success on the merits; the balance of hardships must be in the franchisee's favor; and the granting of injunctive relief must be in the public interest. Accordingly, the defendant's request for a preliminary injunction is granted. The plaintiff's request for a preliminary injunction is denied.

■ The plaintiff's motion for stay is hereby DENIED *in toto*. The controlling bond provision of the PMPA is found at 15 U.S.C. § 2805(b)(3). The section provides:

> "Nothing in this subsection prevents any court from requiring the franchisee in any action under subsection (a) of this section to post a bond, in an amount established by the court prior to the issuance or continuance of any equitable relief."

Thus, the preceding provision grants the court power to require the posting of a bond to secure damages. However, it does not articulate a categorical imperative mandating the posting of a bond. Had Congress intended the mandatory posting of bond, it would have specifically stated this requirement in the statute. The foregoing conclusion is dictated by application of the plain meaning doctrine to the statute. *See* 2 Sutherland Statutory Construction, §§ 46.01, 46.04 (C. Dallas Sands ed. 1974); R. Dickerson, *The Interpretation and Application of Statutes*, 109, 190, 229–233, 236 (1975). *See also Davy v. Murphy Oil Corp.*, 488 F.Supp. 1013 (1980) (preliminary injunction granted without posting of bond); *Daniels v. Dilmar Oil Co.*, 502 F.Supp. 178 (1980) (preliminary injunction granted without posting of bond); *Wesley v. Mobil Oil Corp.* (preliminary injunction granted without posting of bond). The court bears in mind the fact that the defendant has continued to pay rent to the plaintiff and that the plaintiff will benefit from the sale of goods and services.

Be it so ORDERED.