Joseph GRECO, Plaintiff,

v.

MOBIL OIL CORPORATION, a corporation, and First American Service Corporation, a corporation, Defendants.

No. 84 C 9382.

United States District Court, N.D. Illinois, E.D.

Nov. 20, 1984.

Joseph A. Malek, Joseph A. Malek, Assoc., Berwyn, Ill., for plaintiff.

Memorandum

LEIGHTON, District Judge.

This is a suit brought by Joseph Greco against Mobil Oil Corporation and First American Service Corporation seeking injunctive relief from Mobil's termination of a gasoline station franchise, and enjoining First American from taking possession of the gasoline station premises. Greco alleges that Mobil's conduct seeking to terminate the franchise violates the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801, *et seq.;* the jurisdiction of this court being founded on 15 U.S.C. §§ 2805(a) and (b).

The cause is before the court on plaintiff's motion for a preliminary injunction. After hearing the parties on oral and written submissions, and after receiving evidence consisting of the testimony of witnesses and exhibits, this court concludes that under the provisions of § 2805(b)(2) of PMPA, Greco's motion for a preliminary injunction should be granted. Accordingly, as will be stated in the court's preliminary injunction order, defendant Mobil shall refrain, until further order of this court, from interfering with, altering, or discontinuing in any manner, the normal and usual business arrangements which plaintiff has enjoyed under the Retail Dealer Contract and Service Station Lease dated July 6, 1981. All services which have been terminated by defendant Mobil shall be resumed immediately; and defendant First American Service will be enjoined, until further order of this court, from in any way taking action to assume possession of the retail gasoline service station located at 1590 Lee Street, DesPlaines, Illinois. The *following are the facts and the principles of law that compel this court to its conclusions.*

I

Robert E. Kehoe, James M. Mulcahy, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendants.

Since November 12, 1980, Joseph Greco has been operating a Mobil service station at 1590 Lee Street, DesPlaines, Illinois, un-

der franchise agreements with Mobil Oil Corporation. Mobil owns the service station premises; it is generally engaged in the petroleum industry, including the franchising of retail dealerships like the ones it entered into with Greco. First American Service Corporation has a contract to purchase the site of Greco's service station from Mobil at the expiration of a franchise that, by its terms, was to expire on October 31, 1984. Mobil and First American intend to use the site as an outlet for changing motor oil. The terms of the franchise between Greco and Mobil were incorporated in a retail dealer contract and service station lease which described the franchised premises as consisting of the land "including the improvements and equipment now or hereafter placed hereon, listed on Schedule A...." The schedule listed a number of underground tanks, disc island light frames, dispensers, pumps, and other personal property.

Sometime near the end of 1982, Mobil decided to divest a number of service stations, including Greco's. During 1983, Greco learned of Mobil's intentions; and in conversations with representatives of the corporation, he learned that Mobil was willing to sell the gasoline station to him. However, no offer to sell was ever made by Mobil. Nonetheless, Greco obtained a $171,000 appraisal of the property during the summer of 1983. During the first part of 1984, he contacted the resale marketing manager for Mobil, and in the presence of other corporation representatives, discussed possible purchase of the filling station.

On February 15, 1984, Mobil wrote Greco a letter; the subject was "Notification of Non-Renewal of Service Station No. 15210." Mobil stated that "The reason for this non-renewal is as follows: Mobil has determined, in good faith and in the normal course of business, to sell the premises." The letter went on to say that "[w]ithin the next 90 days, Mobil will be in contact with you concerning your rights pursuant to Federal Law with respect to the purchase of the premises." Then, during the early spring of 1984, Mobil representatives discussed with Greco his interest in purchasing the gasoline station. They told Greco that the corporation was interested in selling the premises to him. A curbside appraisal was made to determine the approximate amount that Greco would have to pay for the station; the real estate was appraised at $185,000, and to the recollection of Mobil representatives, certain of the filling station equipment was appraised at around $19,000. Thereafter, Mobil had an MIA appraisal of the property which determined it had a value of $285,000. Sometime around March 15, 1984, Mobil received from First American an offer to purchase the land on which Greco's filling station was located for $285,000; Mobil accepted the offer and entered into a contract, setting the closing of the transaction for a day after October 31, 1984, when Greco's interest in the gasoline station was to expire with the end of his franchise term. Mobil and First American intend to proceed with the sale promptly, in accordance with the terms of their contract.

On April 16, 1984, Mobil wrote Greco, telling him that "In accordance with the provisions of the Petroleum Marketing Practices Act," it was granting him "a Right of First Refusal regarding the [filling station] on the same terms and conditions, as the attached Third Party Offer dated March 15, 1984, which was made by First American Service Corporation to Mobil Oil Corporation." The attachment was a contract by which First American agreed with Mobil to buy the site of Greco's filling station for the sum of $285,000; no personal property or gasoline station equipment was included in the sale. Greco was given forty-five days to exercise the offer. He did not reply to Mobil's letter. In this suit, and to support his motion for preliminary injunctive relief, Greco contends that the right of first refusal of the First American offer did not discharge Mobil's obligation under PMPA to have made him a bona fide offer to purchase the franchised premises because First American was only offering to purchase the land on which the filling station is located. Greco argues that the

provisions of PMPA require that Mobil, his franchisor, in good faith, offer to sell him the franchised premises, including the personal property and equipment listed on Schedule A to his service station lease; that is, the underground tanks, dispensers, island light frames, and pumps. Greco insists that since Mobil has not complied with the provisions of PMPA and made him a bona fide offer under which he could purchase the franchised premises, he is entitled to preliminary injunctive relief restraining termination of his franchise by Mobil, and enjoining First American for interfering with his possession of the gasoline station.

## II

Congress enacted the PMPA in an effort to protect "franchisees from arbitrary or discriminatory termination or non-renewal of their franchises." S.Rep. No. 95–731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 874. The Act provides a "single, uniform set of rules governing the grounds for termination and non-renewal of motor fuel marketing premises." *Id.* at 19, U.S.Code Cong. & Ad. News at 877. When reviewing a question under the PMPA, the court is guided by the principle that as a "remedial legislation, the Act must be given a liberal construction consistent with its overriding purpose to protect franchisees." *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1221 (7th Cir.1982). A review of the applicable statutory provisions of the Act are essential to an evaluation of the issues raised in this action.

The PMPA prohibits the termination or nonrenewal of a franchise except on the basis of certain specifically enumerated reasons and upon the completion by the franchisor of certain notification requirements. Section 2802 sets forth the conditions and grounds on which a franchisor may terminate or not renew a franchise. As one ground, Section 2802(b)(3)(D)(i)(III) provides that a franchisor has a right not to renew a franchise if there is a "determination made by the franchisor in good faith and in the normal course of business" to

sell the premises. However, in addition to the franchisor's obligation to make a determination in good faith and in the normal course of business to sell, Section 2802(b)(3)(D)(iii), requires a that:

> in the case of leased marketing premises such franchisor, during the 90-day period after notification was given pursuant to section 2804 of this title, either—
>
> (1) made a bona fide offer to sell, transfer, or assign to the franchisee such franchisor's interest in such premises; or
>
> (2) if applicable, offered the franchisee a right of first refusal of at least 45-days duration of an offer, made by another, to purchase such franchisor's interest in such premises.

Section 2804 sets forth the notice requirements necessary for a franchisor to terminate a franchise. Generally, notice of termination or nonrenewal must be given no less than 90 days before the effective date. 15 U.S.C. § 2804(a)(2). Section 2804(c) provides that the notice shall be in writing, sent by certified mail and further provides that the notice shall contain:

> (A) a statement of the intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefor;
>
> (B) the date on which such termination or nonrenewal takes effect; and
>
> (C) the summary statement prepared under subsection (d) of this section

Strict compliance with the notice provision of the Act is required. *Mobil Oil Corp. v. Vachon*, 580 F.Supp. 153, 159 (D.Mass. 1983); *Davy v. Murphy Oil*, 488 F.Supp. 1013 (W.D.Mich.1980); *Blankenship v. Atlantic Richfield Co.*, 478 F.Supp. 1016 (D.Or.1979). Failure to comply with the notice provision, even if the defect is only a minor or technical one, is grounds to enjoin the termination or nonrenewal of the franchise relationship. *Davy v. Murphy Oil, supra* at 1016.

The Act provides franchisees with a cause of action for violation of its provisions. 15 U.S.C. § 2805(a). The court is empowered to grant such equitable relief

472

as it determines is necessary "including declaratory judgment, mandatory or prohibitive injunctive relief, and interim equitable relief," 15 U.S.C. § 2805(b)(1); as well as awarding actual and exemplary damages, and attorney and expert witness fees. 15 U.S.C. § 2805(d)(2).

The standard for granting injunctive relief is contained in Section 2805(b)(2), which provides that a court shall grant a franchisee a preliminary injunction if:

(A) the franchisee shows

(i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

(ii) there exists sufficiently serious questions going to the merits to make such questions a fair ground for litigation

(B) the court determines that, on the balance, the hardships imposed upon the franchisor by issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

■ The standards for the issuance of a preliminary injunction are relaxed under the PMPA. *Davy v. Murphy Oil Co., supra.* No showing of irreparable harm is required. *Mobil Oil Corp. v. Vachon, supra.* A franchisee need not show a "probability" of success on the merits; all that he need show is "some reasonable chance" of success on the merits. *Mobil Oil Corp. v. Vachon, supra* at 156; *Saad v. Shell Oil Co.,* 460 F.Supp. 114, 116 (E.D.Mich.1978). Thus, in order for the court to grant a preliminary injunction, there must exist a serious question which is fair ground for litigation; there must be a reasonable chance for success on the merits; and the balance of hardships must be in the franchisee's favor.

### III

Greco maintains that Mobil failed to comply with the Act because it did not make him a "bona fide" offer to sell the service station pursuant to Section 2802(b)(3)(D)(iii)

of the Act. He contends that because he was never offered the right to purchase the personal property located at the service station, he was not made a bona fide offer.

The issue of what constitutes a bona fide offer under the PMPA was recently addressed by the Eighth Circuit Court of Appeals in *Roberts v. Amoco Oil Co.,* 740 F.2d 602 (8th Cir.1984). There, a franchisee brought an action against Amoco alleging that the franchisor's conduct violated the PMPA in that it had failed to make a bona fide offer to sell within the meaning of Section 2802(b)(3)(D)(iii) of the Act because the offer to sell did not include the gasoline pumps, storage tanks and dispensers. The court, after noting that the question presented was a novel one, looking at the language of the statute and the legislative history, concluded that "as a matter of law ... a bona fide offer to sell leased marketing premises under the PMPA must include the gasoline tanks, storage tanks, dispensers, and other equipment." *Id.* at 607.

■ In this case, the contract between Mobil and First American was only for sale of the land on which the service station was located; it did not include any of the personal property in the service station, and which Greco "employed in connection with the sale, consignment, or distribution of motor fuel." 15 U.S.C. § 2801(9). Therefore, when Mobil offered Greco the right of first refusal of First American's contract, Greco was not given the opportunity to buy the underground tanks, dispensers, island light frames, pumps, and the other equipment listed in Schedule A of the Service Station Lease. Accordingly, Mobil never made Greco a "bona fide" offer to sell the leased marketing premises.

Mobil argues that *Roberts* is distinguishable because in that case there was no offer by a third party and, therefore, the court was only concerned with subsection I of 2802(b)(3)(D)(iii); while in this case, we have a third party offer, thus, subsection II of 2802(b)(3)(D)(iii) applies and this section does not contain a bona fide requirement.

Although it is true that this action is different from *Roberts* because there is an offer by a third party, this court still concludes that under either provision of the PMPA a franchisor must present a franchisee with an offer to buy which must include the personal property owned and controlled by the franchisor.

Subsection II of 2802(b)(3)(D)(iii) provides that a franchisor must offer the franchisee the right of first refusal of an offer "made by another, to purchase such franchisor's interest in such premises." Thus, the third party's offer in which the franchisee is given the right of first refusal must be an offer to purchase the "franchisor's interest" in the premises. The franchisor's interest in this case can be found by looking at what property it owns at the service station. Mobil owns not only the land, it also owns the personal property listed in Schedule A of the Service Station Lease. The land and the personal property is the "franchisor's interest." As the court in *Roberts* noted:

> When Congress required a franchisor to make a bona fide offer to sell the leased marketing premises, Congress certainly intended the offer to include more than the real property. It explicitly required that the offer include the property controlled by the franchisor and used by the franchisee to distribute motor fuel.

*Roberts v. Amoco Oil Co.*, 740 F.2d at 606. The property controlled by Mobil includes both the real and personal property. Because First American's offer did not include any personal property it was not an offer to purchase the "franchisor's interest" in the premises. Therefore, the right of first refusal Mobil gave to Greco did not comply with 2802(b)(3)(D)(iii)(II) of the PMPA. Accordingly, Mobil has violated the PMPA by never making Greco a bona fide offer to purchase the premises or giving him a right of first refusal of an offer to purchase Mobil's interest (including the personal property) in the service station.

Greco next argues that the February 15, 1984 letter of notice of termination failed to comply with Section 2804(c). Greco con-

tends that the simple reiteration in Mobil's letter of the statutory language "... in good faith and in the normal course of business, to sell the premises," does not satisfy the Section 2804(c)(3)(A) requirement that the reasons for nonrenewal be stated in the letter. The court agrees that the use of this self-serving language which just parrots the PMPA's language raises serious questions as to Mobil's compliance with Section 2804(c)(3)(A). In *Mobil Oil Corp. v. Vachon, supra,* an action which involved the same franchisor and similar language in the purported notice, the court found a serious question existed with the notice because, while it stated that Mobil wanted to sell the premises, it did not "give reasons as to why it desired to sell." *Id.* at 157. Similarly, the notice in this case only states that Mobil wanted to sell the premises; it gives no reasons as to why Mobil wants to sell. Because of this deficiency, a serious question exists as to Mobil's compliance with the notice provision of the PMPA. Therefore, the court concludes that Mobil has violated the PMPA by not making Greco an offer to purchase which complies with the PMPA and that a serious question exists as to Mobil's compliance with the notification requirement of the Act. Thus, Greco has more than a reasonable chance for success on the merits.

The balance of hardships, as they invariably do in such cases, weigh heavily in favor of granting the injunction. See *e.g. Mobil Oil Corp. v. Vachon,* 580 F.Supp. at 159; *Wojciechowski v. Amoco Oil Co.,* 483 F.Supp. 109, 112 (E.D.Wisc.1980); *Gilderhus v. Amoco Oil Co.,* 470 F.Supp. 1302, 1306 (D.Minn.1979). The harm to Greco of the loss of his franchise far outweighs any harm to Mobil if the franchise relationship is continued until the merits of this case are reached. As was aptly stated by one court:

> In balancing the hardships, the Court is of the opinion that the harm to Plaintiff [the franchisee] will be great if an injunction is not issued while the harm to Defendant [the franchisor] will be small upon the issuance of an injunction.

Without an injunction, Plaintiff would lose his only source of income; he and his wife would be out of work; Plaintiff would have to dispose of his inventory and equipment at a deflated price and at a substantial loss; Plaintiff would have to dismiss his employees; and Plaintiff's business would be lost. In effect, without the injunction, Plaintiff would be placed on the brink of bankruptcy.

On the other hand, the effect of an injunction would be minimal on Defendant. Business and rent would continue as usual with Defendant realizing income from the premises as well as profit on goods sold Plaintiff.

*Daniels v. Dilmar Oil Co.,* 502 F.Supp. 178, 181 (D.S.C.1980). The same reasoning applies in this case. While it is true that Mobil has a contract to sell the property to First American, a fact not present in the cases cited above, this, the court concludes, does not shift the balance of hardships in Mobil's favor.

Mobil argues that even if it did violate the PMPA by not making an offer to Greco to buy the service station, the court cannot, pursuant to Section 2805(e)(1), compel the continuation of the franchise relationship. This section provides, in pertinent part:

the court may not compel a continuation or renewal of the franchise relationship if the franchisor demonstrates to the satisfaction of the court that—

(A) the basis for such nonrenewal is a determination made by the franchisor in good faith and normal course of business ... to sell such premises...

(B) the requirements of section 2804 of this title have been complied with.

This section is not applicable to this case. As noted above, there exists a serious question as to sufficiency of the Mobil's notice of nonrenewal, thus, Mobil has failed to "demonstrate to the satisfaction of the court that ... the requirements of section 2804 have been met."

Moreover, assuming *arguendo,* that the notice in this case had complied with Section 2804, the court, in its discretion would still compel continuation of the franchise, *pendent lite.* Section 2805(e)(1) states that a "court *may* not compel" (emphasis added) the continuation of a franchise. "May" when used in a statute is a permissive word, *Burglin v. Morton,* 527 F.2d 486, 488 (9th Cir.1975), and will be construed to vest discretionary power in a court, unless the context of its use clearly indicates a purpose to use it in a mandatory sense. *United States v. Bowden,* 182 F.2d 251, 252 (10th Cir.1950). The clear purpose of the PMPA is to protect the franchisee, *Brach v. Amoco Oil, supra;* and to effectuate this purpose the court should be given the discretion when to order the continuation of a franchise relationship. Therefore, even if Mobil had given proper notice of nonrenewal, this court, in its discretion would still compel the continuation of the franchise relationship until the merits of the case have been decided.

## IV

■ In conclusion, for the reasons stated, the court finds that Mobil has violated the PMPA by not making Greco a proper offer to purchase, that there exists sufficiently serious questions going to the merits to make such questions fair ground for litigation; that Greco has more than a reasonable chance for success on the merits; and that, on balance, the hardships imposed on Mobil by issuance of a preliminary injunction will be less than the hardship imposed on Greco if the injunction was not issued. Accordingly, Greco's motion for a preliminary injunction is granted; an appropriate order will issue.