CIACCIO, Judge.
In this action seeking specific performance of a contract, plaintiff appeals a summary judgment in favor of all defendants, dismissing plaintiff’s petition. We affirm.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. Art. 966. Thus, when considering a Motion for summary judgment the court must determine first whether there is any genuine issue as to material fact. As a method for resolving a genuine issue as to material fact, a hearing on a motion for summary judgment cannot substitute for a trial on the merits. Only after deciding that there is no genuine issue as to material fact may the court decide whether mover is entitled to judgment as a matter of law.
The burden of proof in a motion for summary judgment is on the mover to establish that there are no genuine issues of material fact. This burden is a great one. Only when reasonable minds must inevitably concur is a summary judgment warranted; any doubt should be resolved in favor of a trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); Seamster v. Kerr-McGee Refinery Corp., 488 So.2d 1139 (La.App. 2nd Cir.1986).
In 1956 Gulf Oil Corporation purchased a particular piece of real property for use as a service station and outlet for the sale of its petroleum products. On July 1, 1965, Gulf leased the premises to Mr. Robert P. Clark who agreed to sell and market Gulf products and services. The lease and attending franchise agreements were continuously renewed for nearly twenty years.
In early 1984 Gulf was approached by a group of investors interested in purchasing the property. After considering the offer, Gulf decided to sell the property. On July 16, 1984, Gulf and ERA Enterprises, Inc. entered into an “Agreement to Purchase and sell Real Estate.” ERA alleges that Gulf breached this agreement, and by this action seeks its specific performance.
Gulf agreed to sell and ERA agreed to buy the property for $350,000.00. Pursu *162 ant to the agreement ERA paid Gulf $15,-000.00 as earnest money. The agreement expressly acknowledged the franchise relationship between Gulf and Clark as defined and regulated by the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801-2806. The agreement provides:
In accepting this conveyance, and as part of the consideration therefor, Purchaser [ERA] acknowledges that Robert P. Clark has a franchise, as defined by the Petroleum Marketing Practices Act, with respect to the property covered by this Agreement of Sale. Purchaser agrees that it will, in all matters, act as though Purchaser were a franchisor under the Petroleum Marketing Practices Act, and Purchaser shall not terminate or fail to renew the franchise or franchise relationship with Robert P. Clark until October 31,1985, except as provided in the Petroleum Marketing Practices Act.
* # * * * *
It is understood and agreed by Purchaser that in order for Seller to comply with the Petroleum Marketing Practices Act, Seller is required to offer to sell the herein described premises to its franchisee, Robert P. Clark, on the same terms and conditions as contained herein and that said Franchisee has forty-five (45) days in which to accept or reject the offer. In the event said Franchisee accepts the offer, then it is understood and agreed by Seller and Purchaser that this agreement shall be null and void and of no effect and Seller agrees to refund to Purchaser any and all sums deposited herewith and all parties hereto shall be relieved from any and all further liability under this agreement.
Gulf notified Clark of his right of first refusal provided under the PMPA, and informed him of the terms of the agreement to purchase and sell between Gulf and ERA. Gulf calculated that the 45 days during which Clark could exercise this right would expire on September 10, 1984.
The agreement between ERA and Gulf contained a restrictive covenant which prohibited the purchaser from using the property-as a service station for five years. On August 20, 1984, Clark advised Gulf that he wanted to buy the property, but without the restrictive covenant because he wanted to continue to operate his service station. While considering Clark’s counter proposal and without ERA’s approval, Gulf extended the deadline for Clark to exercise his right of first refusal, initially until September 24, 1984, and then again until October 8, 1984.
Relying on Roberts v. Amoco Oil Co., 740 F.2d 602 (8th Cir.1984), Gulf ultimately decided that to comply with the PMPA it must offer Clark a right of first refusal to purchase the property without the restrictive covenant. Gulf informed ERA that it would sell the property without the restrictive covenant, and on September 25, 1984, offered Clark a right of first refusal to purchase without the restrictive covenant, which offer was open for 45 days, expiring on November 10, 1984. On November 7, 1984, Clark informed Gulf that he would purchase the property without the restrictive covenant, and he paid Gulf $15,000.00 as earnest money. On November 9, 1984, Gulf and Clark executed an agreement to purchase and sell containing the same terms as the agreement between Gulf and ERA (without the restrictive convenant).
Gulf informed ERA that Clark had excer-ised his right to purchase the property, and that, therefore, the agreement between Gulf and ERA was now null and void. Gulf returned ERA’s $15,000.00 in earnest money, but ERA refused to accept the return.
On March 28, 1985, ERA informed Gulf that it would proceed with the sale of the property on April 1, 1985, as provided in their agreement. On March 29, 1985, ERA filed this action for specific performance against Gulf. On April 1, 1985, Gulf sold the property to Clark. On April 18, 1985, ERA supplemented and amended its petition to add as defendants Clark and his mortgage holder, Whitney National Bank.
The pleadings and attached documents contained in the record establish the facts as recounted above. What occurred factually is not in dispute. The trial judge cor *163 rectly concluded that there was no genuine issue of material fact.
ERA argues that “the intent of the contract as to the applicability of the PMPA” remains as a genuine issue of material fact. We find that the contract is clear and unambiguous and speaks for itself. The contract is an undisputed fact. What obligations the contract, as the law between the parties, imposed upon the parties raises a legal issue whose resolution determines whether defendants are entitled to judgment as a matter of law.
ERA argues that Gulf “breached the agreement to purchase and sell.” To support this argument ERA briefly recounts certain events and then states, “Both Clark and Gulf deny these facts.” Neither Clark nor Gulf deny the occurrance of these events. Clark and Gulf take issue with the legal significance and categorization placed upon these events by ERA. The actions of Gulf and Clark are not factually in dispute. Whether those actions constituted a breach of Gulf’s agreement with ERA requires, again, the resolution of a legal issue.
Because we find no genuine issue of material fact we hold that this matter was ripe for summary judgment treatment. We move on to determine whether defendants were entitled to judgment as a matter of law.
By its clear and explicit words the agreement between Gulf and ERA acknowledges Gulf’s statutory obligation as a franchisor to comply with the PMPA regulations controlling Gulf’s relationship with Clark. The agreement further provides that ERA as purchaser “will, in all matters, act as though Purchaser were a franchisor under the Petroleum Marketing Practices Act.”
Congress enacted the PMPA in an effort to protect “franchisees from arbitray or discriminatory termination or non-renewal of these franchises.” S.Rep. No. 95-731, 95th Cong., 2d Sess. 15, reprinted in 1978 U.S.Code Cong. & Ad.News 873, 874. The statute seeks to protect and to effectuate the franchisee’s reasonable expectation that the franchise relationship will be a continuing one. Id. at 18, 1978 U.S.Code Cong. & Ad.News at 876. When reviewing a question under the PMPA, the Federal courts have followed the principle that as a “remedial legislation, the Act must be given a liberal construction consistent with its overriding purpose to protect franchisees.” Brach v. Amoco Oil Co., 677 F.2d 1213, 1221 (7th Cir.1982).
The PMPA prohibits termination or non-renewal of a franchise except on the basis of certain specifically enumerated reasons and upon completion by the franchisor of certain notification requirements. Satisfaction of the Act’s notice requirements is not an issue in this case. 15 U.S.C. § 2802 sets forth the conditions and grounds on which a franchisor may terminate or not renew a franchise. As one ground section 2802(b) (3)(D)(i)(II) provides that a franchisor has a right not to renew a franchise if there is a “determination made by the franchisor in good faith and in the normal cause of business” to sell the premises. Gulf’s decision to sell has not been questioned. In addition to the franchisor’s obligation to make a determination to sell in good faith and in the normal cause of burniess, Section 2802(b)(3)(D)(iii)' requires that:
In the case of leased marketing premises such franchisor, during the 90-day period after notification [of nonrenewal to the franchisee] [must] either—
(I) [have] made a bona fide offer to sell, transfer, or assign to the franchisee such franchisor’s interests in such premises; or
(II) If applicable, offered the franchisee a right of first refusal of at least 45-days duration of an offer, made by another, to purchase such franchisor’s interest in such premises.
In Roberts v. Amoco Oil Co., supra, the court held that as a matter of law an offer to sell the service station premises to a franchisee which did not include the property used in selling and distributing gasoline, such as the pumps, storage tanks and dispensers, was not a bona fide offer as required by 15 U.S.C. Section 2801(b)(3)(D) (iii)(I). The court stated, “Section 2802(b)(3)(D)(iii) requires that franchisees have an opportunity to continue in business by purchasing the entire premises used in *164 selling motor fuel.” 740 F.2d at 607. Applying the court’s rationale to analyze its franchise relationship with Clark, Gulf decided that compliance with the PMPA required that Clark be given an opportunity to purchase Gulf’s property without a restrictive covenant prohibiting sale of petroleum products.
ERA argues that Roberts v. Amoco Oil Co., supra, addresses subparagraph (I), but that subparagraph (II) applies to situations where the franchisor has an offer from a third party and that subparagraph (II) does not have a “bona fide” requirement. In Greco v. Mobil Oil Corp., 597 F.Supp. 468 (N.D.Ill.1984), a similar argument was raised. The facts in Greco fall between the facts of this case and the facts of the Roberts case: The franchisor had an offer from a third party to buy the service station premises excluding any personal property or gasoline station equipment; Greco was offered a right of first refusal on the same terms as the third-party offer. The court held that Mobil had not made Breco a “bona fide” offer. Addressing the argument that subparagraph (II) does not have a “bona fide” requirement, the court reasoned that subparagraph (II) requires an offer to the franchisee of the right of first refusal of an offer “made by another to purchase such franchisor’s interest in such premises,” and held that the “franchisor’s interest” includes the land and the personal property. The Court relied upon the opinion in Roberts v. Amoco Oil Co., supra.
While this case does not involve an offer excluding the franchisor’s interest in the personal property on the service station premises, we find persuasive the rationale of the Roberts and Greco decisions. Because of the obvious remedial nature of the PMPA, we adopt the Federal courts’ liberal construction approach. “The theory of [the Roberts and Greco ] cases is that the purpose of the Act — to protect franchisees against arbitrary termination — would be undermined if sale offers did not render as a reasonable possibility the franchisee’s continued operation of a service station.” Ballis v. Mobil Oil Corp., 622 F.Supp. 473, 475 (N.D.Ill.1985).
Considering this rationale Gulf correctly determined that compliance with the PMPA required that the offer to Clark, whether under subparagraph (I) or subparagraph (II), render as a reasonable possibility Clark’s continued operation of the service station. That is, the offer to Clark could not prohibit the use of the premises as a service station.
We acknowledge that not all of the Federal courts have wholeheartedly embraced the rationale of Roberts v. Amoco Oil Co., supra. See for example, Tobias v. Shell Oil Co., 782 F.2d 1172 (4th Cir.1986). But, interpreting the act so as to protect the franchisee’s right to continued operation of a service station is universal in the Federal jurisprudence. For example, the court in Tobias v. Shell Oil Co., 782 F.2d at 1174 stated, “The rule of conformity with the offeror’s general practices is accordingly accompanied by the requirement that a bona fide offer ‘must meet or very nearly approach’ the fair market value of the fully operative leased station. Brownstein v. Arco [Petroleum Products], 604 F.Supp. [312] at 315 [ (E.D.Pa.1985) ].” (emphasis ours.) Compare, Lugar v. Texaco, Inc., 755 F.2d 53 (3d.Cir.1985).
ERA argues that the PMPA does not control its relationship with Gulf. In a vacuum, the PMPA was not enacted to control a franchisor’s relationship with a non-franchisee, third party. Our Code provides, however, that contracts have the effect of law for the parties. La.C.C. Art. 1983. Further, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La.C.C. Art. 2046.
ERA agreed with Gulf and acknowledged Gulf’s obligation connected with the sale of the service station to comply with the requirements of the PMPA. ERA further obligated itself to “in all matters, act as though [ERA] were a franchisor under the Petroleum Marketing Practices Act.” We find that by its clear and explicit words the agreement between ERA and Gulf obligated both parties to comply with those *165 provisions of the PMPA which applied to the sale transaction contemplated by the parties.
We decided above that the offer to Clark of a right of first refusal to purchase the property subject to the restrictive covenant did not comply with the requirements of the PMPA because it did not render as a reasonable possibility Clark's continued operation of the service station. Thus, the 45-day duration for acceptance of that offer was not operative. Even though ERA and Gulf agreed that Clark would be offered the property on the same terms as agreed upon between ERA and Gulf, ERA and Gulf intended that the offer comply with the PMPA. When Gulf later extended to Clark an offer which did comply with the PMPA — an offer without the restrictive use convenant — the 45 days began to run. Within 45 days Clark accepted the offer and executed an agreement reflecting the terms of the offer. We find that Gulfs actions complied with the terms of its agreement with ERA, and that no breach of that agreement occurred.
Accordingly, we affirm the judgment of the district court. Appellant, ERA Enterprises, Inc., shall pay all costs.
AFFIRMED.