**Ferrel G. BLANKENSHIP, Plaintiff,**

v.

**ATLANTIC–RICHFIELD COMPANY, Defendant.**

**Civ. No. 79–498.**

United States District Court, D. Oregon.

Sept. 24, 1979.

David S. Shannon, Shannon & Johnson, Portland, Ore., for plaintiff.

Barnes H. Ellis, Christine L. Dickey, Stoel, Rives, Boley, Fraser & Wyse, Portland, Ore., for defendant.

## OPINION

BELLONI, District Judge:

This suit is brought under the new Petroleum Marketing Practices Act (hereinafter the Act), 15 U.S.C. § 2801 et seq., enacted and effective June 19, 1978. The Act is intended to protect the franchised retailers of motor fuel from arbitrary or unfair terminations or nonrenewals of the franchises by the franchisors.[1] The Act outlines the circumstances under which termination or renewal is permissible and the procedures a franchisor must follow.[2] This Court has jurisdiction pursuant to 15 U.S.C. § 2805(a). Jurisdiction over the parties and venue in this district are undisputed.

### Statement of Facts

Plaintiff has been leasing Interstate-5 freeway exit ARCO service station in Sutherlin, Oregon, since April 1, 1976. Defendant did not want to renew plaintiff's lease of the station after it expired June 1, 1979. On March 13, 1979, defendant sent notice of its intent not to renew the lease. In mid April 1979, defendant delivered to plaintiff a supplemental notice containing a summary of the Act.

Defendant's basis for nonrenewal is the eighteen customer complaints it received between August, 1976 and February, 1979, regarding transactions at plaintiff's station. The most common complaint concerned the alleged attempts of station attendants to oversell automobile repairs. Plaintiff has presented evidence in an attempt to rebut the validity of the complaints. Plaintiff also disputes having received notice from defendant of the existence or nature of several of the complaints. Plaintiff has brought this action under the Act to enjoin defendant's failure to renew the lease.

By my preliminary injunction of June 12, 1979, defendant has been required to allow plaintiff to remain on the premises under the terms of the franchise agreement, until the earlier of the expiration of 90 days or the completion of trial.

### The Applicable Law

15 U.S.C. § 2802(a) provides that no franchisor may fail to renew any franchise relationship, except as provided in subsection (b). The relevant portions of § 2802(b)(1) provide:

> "Any franchisor . . . may fail to renew any franchise relationship, if—
>
> (A) the notification requirements of section 2804 of this title are met; and
>
> (B) . . . such nonrenewal is based upon a ground described in paragraph (2) or (3)."

The relevant portions of § 2804 provide:

> "(a) Prior to . . . nonrenewal of any franchise relationship, the franchisor shall furnish notification of . . . such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship—
>
> (1) in the manner described in subsection (c) of this section; and
>
> (2) . . . not less than 90 days prior to the date on which such . . . nonrenewal takes effect."

> \*     \*     \*     \*     \*     \*

> (c) Notification under this section—
>
> (1) shall be in writing:
>
> (2) shall be posted by certified mail or personally delivered to the franchisee; and
>
> (3) shall contain—
>
> (A) a statement of intention . . . not to renew the franchise relationship, together with the reasons therefor;
>
> (B) the date on which such . . . nonrenewal takes effect; and
>
> (C) the summary statement prepared under subsection (d) of this section [a summary of the provisions of the Act published by the Secretary of Energy]."

The relevant portions of § 2802(b)(3) provide:

---

1. See generally, S.Rep.No. 95–731, 95th Cong., 2d Sess., reprinted in [1978] U.S.Code Cong. & Admin.News, p. 873; Gilderhus v. Amoco Oil Company, 470 F.Supp. 1302, 1303 (D.Minn.

1979); Saad v. Shell Oil Company, 460 F.Supp. 114, 115 (E.D.Mich.1978).

2. Id.

"For purposes of this subsection, the following are grounds for nonrenewal of a franchise relationship:

\* \* \* \* \* \*

(B) The receipt of numerous bona fide customer complaints by the franchisor concerning the franchisee's operation of the marketing premises, if—

(i) the franchisee was promptly apprised of the existence and nature of such complaints following receipt of such complaints by the franchisor; and

(ii) if such complaints related to the condition of such premises or to the conduct of any employee of such franchisee, the franchisee did not promptly take action to cure or correct the basis of such complaints."

In summary, for defendant to properly fail to renew: (1) defendant must have given 90-day advance notice of intent not to renew containing the information required by § 2804(c), (2) defendant must have received customer complaints that were numerous and bona fide, (3) defendant must have promptly appraised plaintiff of the complaints, and (4) plaintiff must not have taken corrective action with regard to complaints directed to the conduct of an employee.

*The 90-Day Notice Requirement*

■ Section 2804(a)(2) required defendant to give notice of intent not to renew 90 days before June 1, 1979, the effective date of nonrenewal of the franchise relationship.[3] The notice sent March 13, 1979, was not 90 days before June 1, 1979. Thus, defendant has failed to comply with the notice requirement, and plaintiff must prevail under the Act. The notice requirement is a mandatory prerequisite to defendant's nonrenewal. I have no authority to grant relief from that requirement.

Defendant has argued that § 2805(b)(1) gives the Court broad equitable powers to cure the notice defect by granting plaintiff only what relief is "necessary to remedy the effects" of the notice defect.[4] Defendant argues that the 90-day extension granted by the preliminary injunction was all that was "necessary to remedy the effects" of defendant's late notice. Defendant asserts that the purpose of the notice is to allow plaintiff sufficient time to take whatever action is necessary in light of the notice. Defendant concludes that this purpose has been fulfilled, now, by the 90-day extension.

■ That argument is rejected. Section 2805(b)(1), when read in context with the rest of the Act, refers to relief of the kind plaintiff was requesting. Section 2805 is the enforcement provision of the Act, and outlines the relief afforded plaintiff-franchisee in a civil action under the Act. Defendant cannot rely on plaintiff's remedy provision to argue that the Court can waive a statutory prerequisite to the defense. If Congress had intended the Court to have the power to cure or waive a notice defect, it would have so provided under the notice provisions of § 2804, and not the remedy provisions of § 2805.[5]

---

**3.** Section 2801(14) defines "fail to renew" and "nonrenewal" to mean "a failure to reinstate, continue, or extend the franchise relationship—(A) at the conclusion of the term, or on the expiration date, stated in the relevant franchise . . . ." The expiration date here was June 1, 1979.

**4.** Section 2805 provides:

"(a) If a franchisor fails to comply with the requirements of section 2802 or 2803 of this title, the franchisee may maintain a civil action against such franchisor.

\* \* \* \* \* \*

(b)(1) In any action under subsection (a) of this section, the court shall grant such equitable relief as the court determines is necessary to remedy the effects of any failure to comply with the requirements of section 2802 or 2803 of this title, including declaratory judgment, mandatory or prohibitive injunctive relief, and interim equitable relief."

**5.** This notice question appears to be one of first impression. Only four cases involving the Act have been reported thus far. *Gilderhus and Saad,* supra note 1; *Frisard v. Texaco, Inc.,* 460 F.Supp. 1094 (E.D.La.1978); and *Ted's Tire Service, Inc. v. Chevron U. S. A., Inc.,* 470 F.Supp. 163 (D.Conn.1979). *Saad, Gilderhus* and *Frisard* all involved preliminary injunctions pending trial of the case. *Ted's Tire Service* held that the Act did not apply because the nonrenewal predated the Act. Only *Frisard* involved a notice question. There, Texaco successfully invoked § 2804(b)(1), which provides

However, had I the authority to cure defendant's notice defect, I would do so. This is because strict application of the notice provision creates a hardship on the franchisor, particularly under the facts of this case.

*The Other Requirements for Nonrenewal*

While this result does not require the making of other findings, I shall do so to obviate a second trial in the event of a reversal.

Under § 2802(b)(3)(B), I hold that all eighteen customer complaints are relevant to this case even though only three of the complaints post-dated June 19, 1978, the effective date of the Act. I find that the complaints were numerous and bona fide. I find that defendant promptly apprised plaintiff of the existence and nature of each of the complaints. I find that plaintiff did not take prompt corrective action to cure or correct the basis of any of the complaints.

In sum, except for the requirement of the 90-day notice, I find that defendant has met all the requirements for nonrenewal under the Act. Were it not for defendant's defective notice nonrenewal would be appropriate in this case.

*Conclusion*

Accordingly, plaintiff shall prevail. Plaintiff is granted an injunction compelling renewal for another three year term, commencing June 1, 1979. The terms and conditions of the 1976–1979 franchise agreement shall govern this renewal term. A supplemental hearing will be necessary to consider actual damages, if any, and attorney fees.

The foregoing shall constitute findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

an exception to the 90-day notice requirement in special circumstances. Defendant Atlantic-

Richfield Company does not maintain that this exception applies in this case.