**Lonnie MARTIN, Plaintiff,**

v.

**TEXACO, INC., Defendant.**

**No. TCA 84–7081–WS.**

United States District Court,
N.D. Florida,
Tallahassee Division.

Feb. 7, 1985.

Edward S. Stafman, Tallahassee, Fla., for plaintiff.

Bruce C. Bailey, J. Burke McCormick, Houston, Tex., Carolyn Raepple, Carlos Alvarez, Tallahassee, Fla., for defendant.

## ORDER

STAFFORD, Chief Judge.

At the pre-trial conference held in this case on February 1, 1985, the court left open the issue of strict compliance with the notice requirements of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801–2806. After reviewing the trial memoranda and the relevant case law, and hearing argument of counsel, the court determines that both of the following questions should be submitted to the jury: (1) whether plaintiff received the summary statement and, if he did not, (2) was he thereby deprived of adequate notification.

Plaintiff denies having received the summary statement at all, even though the termination letter says that the statement is attached and references an enclosure. *See* complaint, exhibit D (document 1). Whether plaintiff received the statement is purely an issue of credibility and must be submitted to the jury. If the jury finds that plaintiff did not receive the statement, the question arises as to whether plaintiff suffered any harm or injury. From the representations of counsel at pre-trial, plaintiff will show that he went immediately to a lawyer, but that the lawyer had to spend some time researching before he found the PMPA, even though the letter contains a citation to the Act. In any event, whether plaintiff was harmed is purely an issue of damages and must also be submitted to the jury.

Plaintiff relies on *Blankenship v. Atlantic-Richfield Co.,* 478 F.Supp. 1016 (D.Ore.1979), for the proposition that "the failure to strictly comply with the notice requirements of the PMPA invalidates a termination." Plaintiff's trial memorandum, document 166 at 5. Plaintiff would have this court rule that if defendant did not include the required summary statement in the notice that is in all other respects sufficient, that notice is now invalid and the termination null and void. This court doubts the wisdom of such a rule that elevates form over substance to the exclu-

sion of reason. And, in fact, such a rule is not compelled by the statute.

Perhaps the best place to begin the analysis is with the *Blankenship* case itself. First, the *Blankenship* court was dealing with a question of first impression. *Blankenship* at 1018 n. 5. Of the four cases preceding *Blankenship,* only one dealt with the notice provisions, and that case involved a section of the Act different from what was under consideration in *Blankenship. Id.* Secondly, it should be pointed out that the *Blankenship* court was construing the time limitation of section 2804(a) of the Act and not section (c) which relates to the form of the notice. This distinction is significant because had the court been dealing solely with the *form* of the notice, it might not have reached its conclusion that Congress did not intend the court "to have the power to cure or waive a notice defect." *Id.* at 1018. Indeed, this court would be more responsive to an argument of strict compliance based on time limitations where plaintiff did not have time to act to protect his rights. But that is not the claim advanced by plaintiff. Thirdly, the conclusion in *Blankenship* is nothing more than an *ipsi dixit;* that court divines the intent of Congress for a new law without any reference at all to its legislative history. This in itself would not nullify the persuasive value of the case except that the conclusion itself is not logical. The defendant in *Blankenship* argued that under section 2805, the enforcement provisions of the Act, the court could only grant the franchisee whatever relief is necessary to remedy the effects of the failure to comply with the notice provisions. The court dismissed this argument out of hand, saying:

Section 2805(b)(1), when read in context with the rest of the Act, refers to relief of the kind plaintiff was requesting. Section 2805 is the enforcement provision of the Act, and outlines the relief afforded plaintiff-franchisee in a civil action under the Act. Defendant cannot rely on plaintiff's remedy provision to argue that

the Court can waive a statutory prerequisite to the defense.

*Id.*

This court does not agree that the defendant in *Blankenship* or the defendant in the case at bar are relying on the remedy provisions to argue that the court can waive the notice requirement. Rather, a fairer characterization of defendant's argument is that under section 2805 Congress granted to the courts the discretion to determine what equitable relief plaintiff is entitled to to remedy the effects of failure to comply with the notice requirements. In this case, there was apparently no effect from the failure to attach the summary statement because the letter referred to the summary as being attached and plaintiff immediately consulted his attorney and was thereby advised of his rights. It is true that the burden is not on plaintiff to educate himself as to his rights, but since he did so, what relief can this court provide? What relief is necessary to remedy the effects of failure to provide the summary statement when there simply were no effects? To ask the question is to answer it.

Plaintiff may complain that a right without a remedy is no right at all. If so, plaintiff misconceives his rights under the PMPA. Rather than a right to receive the summary statement, he has a right to be relieved by the court from any effects of not receiving the statement. That is why the court has determined that the question of deprivation of notification should be submitted to the jury, so that the jury can determine if plaintiff suffered any harm.

To make a jury issue of defendant's failure to provide the statement is consistent with the language of section 2805(d) and (e) that plaintiff may recover actual damages even if the court determines that the defendant should not be compelled to continue the franchise. In effect the issue is one of damages and is necessarily a jury question. *See Thompson v. Kerr Mc-Gee Refining Corp.*, 660 F.2d 1380 (10th Cir.1981).

The cases following *Blankenship* adhere to the principles therein announced but do so without analysis. One notable exception is *Brown v. American Petrofina Marketing, Inc.*, 555 F.Supp. 1327 (M.D.Fla.1983), *aff'd* 733 F.2d 906 (11th Cir.1984). The problem confronting Judge Black in that case was whether defendant had complied with the written notice provisions of section 2802(c)(4). The court concluded that the plaintiffs had actual notice of all the information required by the section. The court found the question of strict compliance regardless of actual notice to be a close one "involving an examination of several countervailing factors." *Brown* at 1335. After noting the ameliorative purpose of the PMPA and the easy application of the *Blankenship* approach, the court expressed a preference for a more flexible approach that would "permit the Court to go beyond form and examine the true substance of the matter. The Court could determine whether plaintiffs were actually aware of the information which Congress required they have under section 2802(c)(4) and whether they were prejudiced by not having had the notice in writing." *Id.* Of course, Judge Black ultimately did not resolve this issue. However, her suggestion that the *Blankenship* approach be refined is persuasive because it makes sense.

Most of the cases that deal with the strict compliance issue do not involve the summary statement. Those cases that deal with the summary are distinguishable. In *Mobil Oil Corp. v. Vachon*, 580 F.Supp. 153 (D.Mass.1983), although plaintiff alleged there was no statement, the court granted an injunction because the statement of reasons was insufficient. In *Scheele v. Mobil Oil Corp.*, 510 F.Supp. 633 (D.Mass.1981), defendant Mobil Oil advanced a constitutional challenge to the Act. Defendant claimed it could not have provided the summary prior to termination because the summary had not yet been published. Of course, the Act itself provided for this situation and so was held to be constitutional. *Id.* at 636. In *Daniels v. Dilmar Oil Co.*, 502 F.Supp. 178, 181 (D.S.C.1980), where the defendant admitted it had not provided the summary statement, the court, citing *Blankenship,* noted that

there were "serious questions raised as to the validity of the notice of termination actually given." *Id.* Of course, *Daniels* involved a preliminary injunction and was not a decision on the merits and so has no precedential value.

In *Thompson v. Kerr–McGee Refining Corp.*, 660 F.2d 1380 (10th Cir.1981), the court did hold that franchisors must strictly comply with the notice provisions of the PMPA, including the summary statement. However, the court also points out that "the trial court submitted the issues presented by the evidence with appropriate instructions to the jury." *Id.* at 1388. The court then sets out in full the trial court's instructions on the issue of compliance with the notice provisions. *Id.* at n. 4. At the trial level, it was uncontroverted that defendant did not provide the statement. *Id.* Nevertheless, the trial court allowed the jury to decide whether defendant's failure was reasonable and whether plaintiff was deprived of adequate notification.

Whether the Tenth Circuit agreed with the trial court's submission of the question is difficult to discern. The holding is clear that strict compliance is required, and the court may have left the instruction undisturbed because it was apparently not appealed by plaintiff and not objected to by defendant. *Id.* at 1389. However, by affirming the district court and by setting out the instruction at such length, the Tenth Circuit seemed to implicitly approve the instruction.

The court would cite one other case to support the decision to modify the *Blankenship* approach. In *Sutton v. Atlantic Richfield Co.*, 539 F.Supp. 658 (C.D.Cal. 1982), plaintiff claimed defendant's notice was insufficient because he could not verify whether the stated reason was a valid one under the PMPA. If the stated reason was insufficient, the defendant would not have been in strict compliance with the Act. In ruling on plaintiff's motion for summary judgment, the court noted that "[c]ompliance with PMPA's notice provisions is a matter of first impression in the Central District of California and in the Ninth Cir-

cuit." *Id.* at 659. The court does not cite *Blankenship* at all. While the court could have been unaware of *Blankenship*, it is more likely that the court did not consider the case to be binding. Thus, the case should be accorded no more weight in this district than it was given in the Central District of California. The court went on to say, "In determining the sufficiency of notices of non-renewal, courts have considered, not only the reason stated in the formal notice, but all the facts about nonrenewal known to the franchisee." *Id.* at 660. This court also believes that sufficiency of the notice should be determined in light of all the surrounding circumstances.

This court has considered the purpose of the PMPA in reaching its decision. However, under the facts of this case, it would be an unreasonable construction of the statute to allow plaintiff to stand on the single technicality of lack of a summary statement to invalidate the termination if he was not thereby prejudiced.

■ Whether the summary was in fact included is a disputed issue, and the court has already determined that defendant has the burden of proof on the issue. Additionally, in order to strike a balance consistent with the purposes of the PMPA, the court now rules that if defendant fails to prove that the statement was provided, it must carry the burden of proving that plaintiff was not prejudiced. The court intends to submit the issue to the jury and directs the parties to submit appropriate instructions.