**INDIANA HOSPITAL LICENSING COUNCIL, Appellant (Plaintiff Below),**

v.

**WOMEN'S PAVILION OF SOUTH BEND, Appellee (Defendant Below).**

No. 3–783A219.

Court of Appeals of Indiana, Fourth District.

Dec. 23, 1985.

Linley E. Pearson, Atty. Gen., Michael Schaefer, Deputy Atty. Gen., Indianapolis, for appellant.

William Rosenbaum, Dillon & Cohen, Indianapolis, Roy Lucas, Lucas & Associates, P.C., Fairfax, Va., for appellee.

MILLER, Judge.

The Indiana Hospital Licensing Council (Indiana Licensing) and Women's Pavilion of South Bend, Inc. (Pavilion) have been engaged in an extended dispute over the constitutionality of the application of a statute which infringed on Pavilion's practice of performing first-trimester abortions. *See Indiana Hospital Licensing Council v. Women's Pavilion of South Bend, Inc.* (1981), Ind.App., 420 N.E.2d 1301. The instant issue before this court concerns the amount of appellate attorneys' fees to be awarded for one of the law firms representing Pavilion in the appeal. *See Indiana Hospital Licensing Council v. Women's Pavilion of South Bend, Inc.* (1981), Ind.App., 424 N.E.2d 461 (on rehearing). Pavilion's local counsel settled his claim with Indiana Licensing, and this appeal concerns the fees awarded to Pavilion's Washington, D.C. counsel. Indiana Licensing avers the trial court's $51,910.05 award after applying a 100% multiplier was excessive while Pavilion argues the award was too small. We find the hourly rates determined by the trial court amounting to $25,-

268.75 for Lucas & Associates proper, but we agree with Pavilion on the issue of the multiplier. We remand for reduction in the amount of attorneys' fees.

## FACTS

Pavilion is a first trimester abortion facility located in South Bend, Indiana. In August of 1978, Indiana Licensing filed a complaint for preliminary and permanent injunctions against Pavilion, alleging it was operating without a license as proscribed by a statute requiring the licensing of all "ambulatory outpatient surgical centers." *See* IND.CODE 16–10–1–7. Pavilion brought a counterclaim under 42 U.S.C. Sec. 1983 to challenge the licensing statute as an unconstitutional invasion of the right to privacy under the Fourteenth Amendment. The trial court held that although Pavilion appeared to be an ambulatory outpatient surgical center within the meaning of the statute to the extent a first trimester abortion is a surgical procedure, attempted regulation of such abortions through the application of Indiana's licensing statute would constitute an impermissible degree of state interference during the first trimester.

Pavilion asked the trial court to award attorney's fees pursuant to 42 U.S.C. § 1988. This section provides that in any § 1983 action, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." *Id.* Pavilion reasoned attorneys' fees should be awarded because it prevailed on its Section 1983 claim to vindicate its constitutional rights. The trial court denied the request, and Pavilion's counsel did not appeal the ruling at the request of their client.

Indiana Licensing, however, appealed the trial court's decision concerning the unconstitutional application of the statute. Pavilion's counsel prepared an appellee's brief in reply to the allegations of error. Our court affirmed the trial court's decision. *Indiana Hospital Licensing Council v. Women's Pavilion of South Bend, Inc.* (1981), Ind.App., 420 N.E.2d 1301.

Pavilion also filed a motion on appeal asking our court for a supplemental order remanding the case to the trial court to award attorneys' fees under Section 1988 for both the trial and the appeal. Indiana Licensing did not dispute Pavilion would normally be entitled to fees under the statute, but contended it waived the issue by failing to cross-appeal. We ruled that because Pavilion did not raise the trial fee issue in its appellate brief, it had waived this issue under Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). Nevertheless, we decided Pavilion had not waived its entitlement to fees for the appeal. Thus, we remanded the case to determine the attorneys' fees incurred in defense of the appeal and on remand. *Indiana Hospital Licensing Council v. Women's Pavilion of South Bend, Inc.* (1981), Ind.App., 424 N.E.2d 461 (on rehearing). The instant proceeding ensued.

Pavilion moved, on April 2, 1982, for an award of appellate attorneys' fees and additionally requested the trial court to modify its judgment in order to allow trial fees also. Attached to this motion were a memorandum of law and various affidavits and exhibits. They include the following facts.

Pavilion retained two law firms in this case for trial and appellate representation. One was Lucas & Associates, P.C., of Washington, D.C. (now Fairfax, Virginia), which is experienced in medical-legal litigation all over the country. The firm's practice encompasses the areas of health care law, malpractice, hospital staff policies, and zoning discrimination. Most particularly, the firm has been involved in several federal abortion cases, such as *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147; *Doe v. Bolton* (1973), 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201; and *Mahoning Women's Center v. Hunter* (1980), 447 U.S. 918, 100 S.Ct. 3006, 65 L.Ed.2d 1110. The firm alleges as a result of its participation of these particular

cases, it does not receive clients with views inimical to a pro-abortion stance.

Attorney Roy Lucas, the senior attorney of the firm, has fifteen years of experience in trial and appellate work. During the course of the appeal and remand, his billing rates increased from $75 per hour to $125 per hour. Lynn Miller, an associate attorney with four years of experience, was billed at a rate of $50 to $75 per hour. Another associate, Jeanette Helfrich, with two years of experience was billed from $65 to $75 per hour. Three law clerks—Geoffrey Gavett, Rhoda Barish, and Louis Stern—had their time billed from $30 to $35 per hour.

Pavilion also employed local counsel, Sanford Brook of Amaral & Brook, South Bend, who assisted during the entire proceedings—at trial, on appeal, and on remand. He assisted Lucas & Associates in briefing the issues, preparing for oral argument, and composing many of the filings in this court. He had experience with abortion litigation at the state and federal level, and his hourly rate in this case was $65. Brook represented Pavilion on three other occasions. As a result of his involvement in this particular case, he received anonymous and threatening phone calls and letters, and was personally attacked on television by a member of the local bar. All in all, Brook's representation of Pavilion in this case has drawn adverse public reaction.

Both law firms presented a detailed accounting of hours billed and expenses incurred.[1] The firms have broken down the entire course of proceedings into four events: the initial trial over the injunction; the appeal; the issue of attorneys' fees on appeal; and the remand to determine attorneys' fees. Moreover, the firms have logged their expenses for each stage. A summary of the trial and appellate fees for each firm is:

| | Lucas & Associates | Amaral & Brook |
|---|---|---|
| **Trial Level** | | |
| Attorneys' fees | $10,198.75 | $2,779.40 |
| Expenses | 2,446.68 | 375.27 |
| **Appeal Level** | | |
| Attorneys' fees | 9,448.75 | 3,906.50 |
| Expenses | 813.83 | 401.97 |
| **Issue of attorneys' fees on appeal** | | |
| Attorneys' fees | 8,076.25 | 310.05 |
| Expenses | 231.14 | 25.50 |
| **Attorneys' fees on remand** | | |
| Attorneys' fees | 10,562.50 | 1,859.65 |
| Expenses | 327.58 | 54.17 |
| TOTAL | $42,105.48 | $9,712.51 |

Pavilion also raised the argument that its attorneys were entitled to a bonus multiplier. Each attorney, Lucas and Brook, by affidavit stated he was entitled to a multiplier. In addition, essentially identical affidavits of two South Bend attorneys were presented in support of a multiplier for Brook. Finally, an attorney from Chicago attested to the factors militating toward applying a bonus for Lucas. The affidavits of Brook and the two South Bend attorneys, however, only supported Brook's fees, and gave no opinion on Lucas's fees. The evidence in favor of a multiplier for Lucas's work then is contained in the Chicago attorney's affidavit and Lucas's self-serving affidavit. Moreover, Pavilion only relies on Lucas's affidavit in its brief and we will discuss its content in our opinion. After requesting application of a 100% multiplier, in addition to 10% interest running from the time fees were incurred, the total requests for each firm was $96,138.51 for Lucas & Associates and $20,966.98 for Amaral & Brook.

The counterpart evidence presented by Indiana Licensing consisted solely of an affidavit from an Indianapolis attorney who had written briefs in over 100 appeals. He declared the prevailing fee in Indianapolis for an appellee's brief was $2,500 and for oral argument, between $250 and $500.

After a hearing,[2] the trial court issued its order with a supporting memorandum of

1. Instances where the expenses have not been itemized will be noted later in this decision.

2. The record reveals the case was heard on arguments. The case was submitted, however, on information contained in attorney affidavits, and neither party relies in its brief on any evidence presented other than the foregoing.

law. The trial court first ruled again Pavilion was not entitled to attorneys' fees for trial work but that, pursuant to our ruling on rehearing, it was entitled to appellate fees and to fees for working on the fee issue itself.

The court in its memorandum of law found the number of hours billed and hourly rates for the appeal and the attorneys' fee issue on appeal were acceptable. It made a downward adjustment, however, in the number of billable hours required on remand because some of the time was spent asking the trial court again for trial fees, an issue we already decided against Pavilion. For Lucas & Associates, the court reduced Attorney Lucas's hours from 41 to 30.75 and Attorney Helfrich's from 69.5 to 52, so that when using the hourly rates of $125 and $75 respectively, the attorneys' fees on remand were $7,743.75. The court reduced Attorney Brook's hours from 28.6 to 21.5, and multiplied this times his hourly rate of $65 to arrive at $1,397.50 for Mr. Brook's attorney's fees on remand. Thus, the court determined the "lodestar figures," or billable hours times the billing rate, for each law firm were $25,268.75 for Lucas & Associates, and $5,614.05 for Amaral & Brook.

Next, the court determined Pavilion was entitled to all amounts itemized as expenses in the appeal, in the appellate request for attorneys' fees, and on remand. The court also ruled that interest of 10% per annum would be assessed beginning September 16, 1982, the date of the judgment awarding Pavilion attorneys' fees.

Finally, the court applied a 100% multiplier to the lodestar figures. The court reasoned:

"The lawyers involved in this case demonstrated a high degree of skill and competence in representing Pavilion. The issues involved were novel and complex, perhaps best evidenced by the long and detailed opinion of the Court of Appeals. The results obtained are significant, not only in Indiana but also in other jurisdictions. Finally, the sensitive and emotionally-charged nature of the issue made this case one which many lawyers, especially in the South Bend area, would refuse to accept."

Record, pp. 210–11. The trial court concluded Lucas & Associates should be paid $51,910.05 plus interest, and Amaral & Brook should receive $11,709.74 plus interest.

Both parties filed motions to correct error and are here on cross-appeal. Attorney Brook, however, reached a settlement with Indiana Licensing; hence, only Pavilion's claim for Lucas & Associates is at issue here. The parties collectively raise the following issues for our consideration:

1. Whether the trial court erred in not allowing full compensation for time spent litigating the fee issue on remand?

2. Whether the trial court erred in using historical hourly rates to determine the lodestar figure instead of current rates?

3. Whether the trial court erred in awarding costs and expenses incurred by Pavilion?

4. Whether the trial court erred in using a 100% multiplier?

*Reduction of billable hours*

The initial issue we address is Pavilion's claim the trial court erred in reducing the number of billable hours reasonably required on remand to determine attorneys' fees. Pavilion alleges "compensation must be awarded for *all* time spent on the attorney fee issue." Appellee's brief, p. 21 (emphasis added). Thus, Pavilion reasons in the instant case the time expended litigating the fee issue on remand was reasonable and necessary so that full compensation is required.

We disagree not only with Pavilion's statement of the law applicable to Section 1988 claims, but also with its application of the law to the facts at hand. First, Section 1988 does not state *all* attorneys' fees are recoverble, but rather allows reasonable attorneys' fees to be awarded. As such, this section does not require an award of the full amount of attorneys' fees claimed,

but only those fees that are reasonable. *Ferdinand v. City of Fairbanks* (1979), Alaska, 599 P.2d 122, 126 n. 12.

■ Second, we do not agree with Pavilion's argument that all the time spent litigating the fee issue on remand was reasonable. The basic principle that the prevailing party is due only compensation for reasonable attorneys' fees necessarily implies an evaluation of the necessity of rendering those services for which a fee is sought. *Stone v. City of Wichita Falls* (5th Cir.1982), 668 F.2d 233. Thus, time spent on issues which are clearly frivolous or manufactured can be properly disregarded by the court. *Brown v. Bathke* (5th Cir.1978), 588 F.2d 634.

■ In applying this standard to the case at hand, the trial court was well within its discretion in reducing the number of hours billed on remand to determine attorneys' fees because much of the time spent was unnecessary. The record demonstrates Pavilion's counsel spent a significant amount of time on remand asking the trial court to order attorneys' fees for the trial and amassing the costs, expenses, and time spent on the trial itself. Pavilion's counsel expended such energy after we had ruled Pavilion had waived any entitlement to trial fees and could only recover fees for the appeal and remand. This became the law of the case. Such an expenditure of time was unnecessary because the issue had already been decided against Pavilion, and the trial court properly reduced the billable hours of Pavilion's counsel on remand as unreasonable.

*Use of historical rates*

Pavilion alleges the lodestar figure is defective not only in the number of billable hours used to calculate it, but also in the hourly rate employed. Pavilion argues the trial court erred in using the historic hourly rates of its attorneys instead of current hourly rates. Pavilion reasons current rates should be used due to the delay between the date services were rendered and the time of judgment and "Pavilion counsel deserves a significant enhancement to re-

flect the delay in payment during this highly inflationary period." Appellee's brief, p. 18.

■ We recognize some courts have expressed approval of Pavilion's argument. *See, e.g., Johnson v. University College of the University of Alabama* (11th Cir.1983), 706 F.2d 1205 (dicta). We believe, however, the better method is to use historical rates, the rates that would have been reasonable at the time the services were in fact rendered. *Bolden v. Pennsylvania State Police* (E.D.Pa.1980), 491 F.Supp. 958, 964. We are persuaded by the reasoning in *Imprisoned Citizens Union v. Shapp* (E.D.Pa.1979), 473 F.Supp. 1017, where the court followed the approach which allows for periodic increases in each attorney's rate, "that method being the more exact scheme of compensation," rather than the approach of those cases that use only one rate for the entire period of recovery, be it current or historical. *Id.* at 1025. The rationale behind using the incremental approach is it recognizes the increase in an attorney's market worth which accompanies his or her increasing expertise. *Vecchione v. Wohlgemuth* (E.D.Pa. 1979), 481 F.Supp. 776, 790.

In the case at hand, the trial court calculated the lodestar figure using historical rates. The rates were increased as the proceedings continued, and the trial court's calculation reflects the increases. The incremental rates were supplied by Pavilion's counsel, and the state did not dispute the reasonableness of the hourly rates. The rates used were fair and reflected the hourly rate of Pavilion's counsel at the time services were rendered. Moreover, Pavilion requested the trial court use historical rates when it filed its petition for attorneys' fees on remand, and the record contains no written petition to use current rates. Thus, Pavilion may not claim now the trial court erred in using the rates it requested.

*Costs and Expenses*

Indiana Licensing questions the propriety of awarding the costs and expenses of

the appeal and remand as a part of an award of "attorneys' fees" under Section 1988. The trial court noted there is a split of authority in the federal courts over the issue. Nevertheless, it cited *Northcross v. Board of Education* (6th Cir.1979), 611 F.2d 624, as containing the better view. We agree the preferable view is stated in *Northcross*, but we must revise the trial court's award because it did not implement the rule correctly.

In *Northcross*, the sixth circuit court of appeals noted there are two separate sources of authority to award out-of-pocket expenses. The division between the two is defined as those "expenses incurred by the attorney which are normally charged to a fee-paying client in the course of providing legal services ... and those costs incurred by a party to be paid to a third party, not the attorney in the case...." *Id.* at 639 (citation omitted). Examples of the first type include photocopying, paralegal expenses, and travel and telephone costs, while the latter grouping includes items such as docket fees, deposition expenses, witness expenses, and the costs of charts and maps. *Id.*

We first address the latter type—those incurred by a party to be paid to a third party. We note at the outset only one such item is listed in Pavilion's claim for Lucas & Associates: costs of $196.35 in printing the brief on appeal. All other expenses listed will be treated as falling under the scope of the first category.

In *Northcross*, the court noted that "costs incurred by a party to be paid to a third party, not the attorney for the case ... cannot reasonably be considered to be attorney's fees." *Id.* Thus, the court reasoned authorization for awarding costs of this type does not come from Section 1988, but must come from a statute or court rule. *Id.* at 639–40. Federal courts may use the authority of a federal statute, 28 U.S.C. § 1920, which provides discretionary authority for federal courts to tax such costs to a party. *See, e.g., id.*

■ The court system in this case, however, is not federal but state. We have our own rules on recovering costs on appeal. Our rule provides:

> "When the judgment is affirmed in whole, the appellee shall recover costs; and when the judgment is reversed in whole the appellant shall recover costs in the court on appeal and the court below. In all other cases costs shall be awarded as the court may deem right following, as nearly as possible, the general regulation for awarding costs.

> The fee paid for procuring the transcript, the costs of serving and notice of appeal are a part of the costs of the court on appeal. *Each party to the action shall bear the cost of printing his own briefs."*

Ind.Rules of Procedure, Appellant Rule 15(H) (emphasis added). Thus, it is apparent from the Indiana rule there is no authority in our court system which would allow the cost of appellate briefs to be charged against the losing party. The award of $196.35 to Pavilion for printing the briefs is therefore in error.

The second source of authority for awarding out-of-pocket expenses—the one applied to expenses incurred by the attorney which are normally charged to a fee-paying clinent—is Section 1988 itself. As the court in *Northcross* reasoned, "Some expenses are included in the concept of attorney's fees, as 'incidental and necessary expenses incurred in furnishing effective and competent representation,' and thus are authorized by Section 1988." 611 F.2d at 639 (quoting 122 Cong.Rec. 12, 160 (1976) (statement of Congressman Drinan, a member of the Committee on Judiciary, during House debate)). *See also Population Services International v. Carey* (S.D. N.Y.1979), 476 F.Supp. 4. Such incidental and necessary expenses have been held to include photocopying, travel expenses, and telephone costs (*See Northcross, supra,* 611 F.2d at 639) as well as meals, lodging, messenger's fees, and long distance phone calls (*See Population, supra,* 476 F.Supp. at 8.)

We are aware some courts have held such out-of-pocket expenses are not included in the concept of attorney's fees under Section 1988. We do not find these cases persuasive on the issue. One case simply states the rule that only attorney's fees may be awarded under Section 1988, concluding expenses are not a part of fees. *See Barrett v. Kalinowski* (M.D.Pa.1978), 458 F.Supp. 689. Another case reasons the legislative history noted above is not definite enough to award expenses as attorney's fees, and notes it would not award expenses "such ... as travel, lodging, parking, and long distance telephone calls so as to refrigerate undue enthusiasm for engaging out-of-state counsel." *Entertainment Concepts III, Inc. v. Maciejewski* (N.D.Ill.1981), 514 F.Supp. 1378. We do not think Section 1988 has as one of its goals the hiring of *local* counsel, but rather is to aid those who vindicate their civil rights in court to obtain *competent* counsel to do so. Thus, we choose not to follow the reasoning of this court.

■ In the case at hand, Pavilion listed the following expenses in the three proceedings in its claim for Lucas & Associates: [3]

### Appeal Costs

| | |
|---|---|
| Air fare | $249.00 |
| Lodging | 128.52 |
| Meals | 42.37 |
| Parking | 15.80 |
| Copying | 48.00 |
| Postage | 60.10 |
| Express Mail | 42.10 |
| Telephone | 31.59 |
| TOTAL | $617.48 |

### Issue of attorneys' fees on appeal

| | |
|---|---|
| Copying | 87.01 |
| Postage | .60 |
| Telephone | 27.50 |

| | |
|---|---|
| TWA Delivery | $ 75.50 |
| Federal Express | 17.00 |
| Petty Cash | 23.53 |
| TOTAL | $231.14 |

### Remand Expenses

| | |
|---|---|
| TOTAL | $327.58 |

We find the trial court was correct in awarding the above listed expenses as a part of attorneys' fees under Section 1988.[4] *See Northcross, supra; Population, supra.*

### Application of a 100% multiplier

■ The final issue before us is whether the trial court erred in applying a 100% multiplier to Pavilion's award of attorneys' fees. The State argues the record does not support using a multiplier, while Pavilion alleges a larger multiplier was appropriate based on the evidence. We will consider both parties' arguments concerning the multiplier under this issue because the same factors are argued by each one as supporting its position.

In *Hensley v. Eckerhart* (1983), 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40, the United States Supreme Court noted recovery of attorneys' fees under Section 1988 does not end with an inquiry into the product of reasonable hours times a reasonable rate, the lodestar figure. The court stated, "There remain other considerations that may lead the ... court to adjust a fee upward or downward...." *Id.* at 1940. The other considerations are commonly referred to as the "twelve factors" first identified in *Johnson v. Georgia Highway Express* (5th Cir.1974), 488 F.2d 714. These factors include:

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal services properly;

---

**3.** Also included was the cost of printing the brief, an issue which has already been addressed in our opinion.

**4.** We note two of the expenses listed—Petty Cash and Remand Expenses—are not fully explained. The $23.53 in petty cash clearly comes within the doctrine of *de minimis non curat lex.* *Hull v. Burress* (1950), 120 Ind.App. 507, 93 N.E.2d 213. As for the remand expenses, the better procedure is to itemize the expenditures. *See, e.g., Population, supra.* Nevertheless, the remand expenses are contained in a sworn affidavit, the State made no motion to strike them, and makes no allegation they were not proper expenditures. Therefore, we will allow Pavilion to recover them.

**1078**

(4) The preclusion of other employment by the attorney due to acceptance of the case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or circumstances;

(8) The amount involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client; and

(12) Awards in similar cases.

*Id.* at 717–19. It is on the basis of these twelve factors an enhancement or multiplier is awarded in Section 1988 cases. We will consider those factors applicable to our case.[5]

The first factor we consider is the preclusion of employment by the attorney due to acceptance of the case. As explained by the court in *Johnson,* "This guideline involves the ... consideration of otherwise available business which is foreclosed because of ... the fact that once employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Id.* at 718.[6] Closely related to this factor is the time limitations imposed by the client or the circumstances, or "[p]riority work that delays the lawyer's other legal work...." *Id.* Pavilion argues time limitations imposed on its counsel and the preclusion of other employment once the attorneys accepted its case support a further enhancement of the multiplier.

In support of its argument, Pavilion asserts its counsel dropped other current and pressing matters to defend against the State's action in filing the injunction. This defense included drafting pleadings, investigating facts, conducting research, and preparing a counterclaim which became the central issue in the case. Thus, Pavilion concludes the representation prevented the firm from accepting new commitments due to the urgent nature of the injunction proceedings.

The flaw in Pavilion's argument, however, is the attorneys' fees to be awarded in this case and any multiplier to be applied are for appellate work, not for trial preparation. All of the work Pavilion lists as preventing the firm from accepting new commitments was for the trial, not the appeal. Moreover, because the trial court denied the injunction in the initial proceeding, the status quo continued unchanged throughout the appeal process so that the circumstances were not so urgent as to impose time limitations on Pavilion's attorneys. Finally, we note the appellate process is a relatively protracted one which allowed Pavilion's attorneys to take an enlargement of time to file its brief. Therefore, we conclude counsel's representation of Pavilion as appellee in the appeal did not impose such time limitations or result in preclusion of other employment to warrant a further enhancement of the multiplier as requested by Pavilion.

Another factor Pavilion argues in support of a further enhancement is whether the fee is fixed or contingent. Pavilion alleges the fee was highly contingent because any payments its counsel might receive were dependent on the continued op-

**5.** The parties ignore certain factors in their briefs, and we will therefore not consider those factors in reaching our decision. These include: (1) Time and labor required; (5) Customary fee; and (11) Nature and length of the professional relationship with the client. Moreover, Pavilion did append a list of cases to its brief in an attempt to argue factor (12) Awards in similar cases. None of the cases cited, however, is similar to our case because all of the cited cases are for trial fees and not appellate fees.

**6.** The other aspect of this factor involves foreclosure of business due to conflicts of interest which occur from the representation. *Id.* Pavilion does not allege in its brief its counsel encountered any such conflicts of interest; thus, we will limit our consideration to preclusion of other employment due to time spent on Pavilion's behalf.

eration of Pavilion. Because the State initiated the action against Pavilion to close it, Pavilion concludes its counsel assumed a considerable risk of nonpayment. Pavilion urges a further enhancement to the multiplier is justified due to such a highly contingent and risky fee.

We disagree, however, with Pavilion's assertion that the fee involved was contingent. As defined by the court in *Johnson, supra,* at 718, a contingent fee is one which is a "percentage of the recovery," and not one which is dependent upon the highly speculative assertion that the client will not be able to pay its attorneys' fees. Moreover, some courts have held the contingent nature of the fee alone does not justify the use of the multiplier. *See, e.g., Strama v. Peterson* (7th Cir.1982), 689 F.2d 661; *Bonner v. Coughlin* (7th Cir.1981), 657 F.2d 931. Thus, we decline to award a further enhancement to the multiplier on the basis of the alleged highly contingent nature of the fees.

Next we consider those factors listed in the trial court's findings as supporting the award of a 100% multiplier. One such factor is the undesirability of the case. In explaining the rationale behind the undesirability factor in awarding a multiplier under Section 1988, the *Johnson* court stated:

> "Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant.... Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries. This can have an economic impact on his practice which can be considered by the court."

*Johnson, supra,* 488 F.2d at 719 (citations omitted). The emphasis, then, is on the economic effect on the attorney due to adverse community reaction to his representation of the civil rights litigant.

In its findings, the trial court noted the sensitive nature of the abortion issue made this case one which many lawyers, especially in the South Bend area, would refuse to accept. We agree the issue of abortion is an emotional and sensitive one. More-

over, we recognize there was evidence a local attorney in South Bend might face hardships if he chose to accept such a case, and the community hostility could have an economic impact on his practice. Such evidence consisted of the hostile and threatening mail and news media coverage received by local attorney Brook after accepting the case. Nevertheless, the negative impact of the case is diminished when counsel is not a member of the local community, as is the case with Lucas & Associates. The negative economic effect emphasized by the *Johnson* court because of community hostility is not a proper factor to enhance the attorneys' fees of a firm that practices on the national level in this field of law and does not have to remain in the South Bend area in the face of community hostility. Although the undesirability of the case might have justified an enhancement of a local attorney such as Brook (whose claim has been settled and is not in issue), we conclude it is not sufficient to support a double multiplier for the fees of Lucas & Associates.

Another factor relied on by the trial court in awarding a 100% multiplier is the experience, reputation, and ability of the attorneys. This factor is closely related to the consideration of the skill requisite to perform the legal service properly. The trial court noted the lawyers involved demonstrated a high degree of skill and competence in representing Pavilion, and concluded this supported a double multiplier.

We disagree with the trial court's conclusion in two respects. We note initially this court is in as good a position as the trial court to evaluate the degree of skill and competence factor because the appeal was before this court, not the trial court, and attorneys' fees in this case are only recoverable for the appeal and not the trial. Likewise, we note much of the work was performed by attorneys who had very limited experience. For example, Jeanette Helfrich with two years of experience spent almost seventy hours on the motion for fees on remand. Lynn Miller, who had four years of experience, expended almost

ninety-five hours on the appeal. With almost two-thirds of the billable hours in the lodestar being attributed to less-experienced associates, this is not a case where the experience, reputation, and ability necessarily militate toward the application of a multiplier.

Secondly, we do not believe the skill requisite to perform the legal service properly merits the weight the trial court placed on it. Several cases from the seventh circuit have stated the quality of the work is already reflected in the hourly rates awarded. *In re Congressional District Reapportionment* (7th Cir.1983), 704 F.2d 380; *Tidwell v. Schweiker* (7th Cir.1982), 677 F.2d 560; *Kamberos v. G.T.E. Automatic Electronic Inc.* (7th Cir.1979), 603 F.2d 598. As the seventh circuit has stated:

> "The lodestar figure reflected the attorneys' normal hourly rates, not some artificially low rate for which the multiplier was compensating. Moreover, the substantial hourly rates, though by no means excessive in this area of high legal fees, to some extent took into account the expertise of the attorneys, as the differing rates for each of the three attorneys show. The attorneys were not being penalized for taking a civil rights case, because the basic rates they received were comparable to what they would have received in private cases."

*In re Congressional District Reapportionment, supra,* 704 F.2d at 384. We find such reasoning persuasive and hold the differing rates applied to each attorney's billable hours took into account the expertise of the attorneys. Thus, it was not proper to award a multiplier on the basis of skill requisite to perform the legal service properly.

A third factor relied on by the trial court included the results obtained, which the court found were significant, not only in Indiana but also in other jurisdictions. The Supreme Court recently addressed this factor and stated:

> "... [T]he most critical factor is the degree of success obtained.

Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved."

*Hensley, supra,* 103 S.Ct. at 1941. Thus, mere success by a party is not enough, and the expenditure of counsel's time must be reasonable in relation to the success achieved in order for the degree of success to support the application of a multiplier.

Moreover, we emphasize the fact that Pavilion was in a much more favorable position for success than the plaintiff civil rights litigant described in *Hensley*. First, Pavilion was the appellee and not the appellant. Considerably less preparation was required for an appellee because the appellant is the party that frames the issues after research. Second, Pavilion's possible success on appeal was bolstered because it was an appellee with the advantage of a judgment in its favor (e.g., conflicting facts resolved in Pavilion's favor were not reviewable on appeal). Thus, the possibility Pavilion would be the prevailing party in the appeal was great because the range of possible success was vast.

We therefore must consider whether the expenditure of Pavilion's counsel's time was reasonable in relation to the success achieved. In the case at hand, the trial court awarded $9,448.75 for the appeal on the merits of the case and $15,820.00 for the pursuit of attorneys' fees. In *Hensley,* the Supreme Court stated, "A request for attorney's fees should not result in a second major litigation." *Id.* In fact, litigation over attorneys' fees after the merits of the case have been concluded has been labeled as "one of the least socially productive types of litigation imaginable." *Id.* at

1944 (Brennan, J., concurring in part, dissenting in part). Although Pavilion did prevail in its effort to keep the abortion clinic open, we conclude the expenditure of Pavilion's counsel's time—over 60% of which was not on the merits but was for the attorneys' fees issue—was not reasonable in relation to the success achieved and the factor of results obtained does not support the application of a multiplier.[7]

Finally, we consider the novelty and difficulty of the question. As explained by the court in *Johnson:*

"Cases of first impression generally require more time and effort on the attorney's part. Although this greater expenditure of time in research and preparation is an investment by counsel in obtaining knowledge which can be used in similar later cases, he should not be penalized for undertaking a case which may 'make new law.' Instead, he should be appropriately compensated for accepting the challenge."

488 F.2d at 718. Again, this factor was one listed by the trial court as justifying the multiplier, relying on our "long and detailed" appellate decision as evidence.

Although our opinion was lengthy, the issues on appeal were not so novel and complex. The issues for the appeal and the facts surrounding those issues had already been established at trial. Moreover, in our conclusion to the opinion, we referred to the "inescapable import of the evidence" and stated we had "no choice but to conclude the State ... unequivocally failed to carry its burden." *Indiana Hospital Licensing, supra,* 420 N.E.2d at 1319. Thus, the length and detail of our opinion does not necessarily determine the complexity of the issues involved.

Pavilion relies on the following work to support its contention of difficult and novel questions: preparation for several hearings

and depositions, the presentation of expert witnesses, and cross-examination of opposing experts regarding sophisticated medical procedures and issues. It must be remembered, however, the work the State is required to pay attorneys' fees for is the appeal, and not the trial. The work involved was an appellee's brief. At the appellate level, the facts are in the record, no further discovery is necessary, and the issues have been framed. Thus, Pavilion's reliance on its trial preparation as supporting it's argument that the issues on appeal were novel and difficult is misplaced.[8]

We also echo the concerns expressed recently by a federal appellate court concerning attorneys' fees for an appeal and the complexity factor. In *Baird v. Bellotti* (1st Cir.1984), 724 F.2d 1032, the court recognized the dangers of duplicative effort and duplicative work product as follows:

"[T]he court questioned whether much of the brief and argument had not already been foreshadowed in prior lower court opinions—to the point that much of counsel's time and charges reflected a mere gilding of the lily. 'At some point, fairness and diminishing returns dictate that charges be not further run up against an opponent.'"

*Id.* at 1037 (quoting *Baird v. Bellotti* (Mass.1982), 555 F.Supp. 579). Although we are not holding that Pavilion's counsel has performed duplicitous legal tasks in the appeal, we nevertheless must conclude the record does not contain enough facts to support the finding that the novelty of the question justified applying a multiplier. As several courts have noted, where the facts are not complex and the legal issues few, a multiplier is inappropriate. *Bonner v. Coughlin, supra; Kambrosa v. GTE Automatic Electric, supra.*

In conclusion, we note multipliers or bonus awards are appropriate only in *ex-*

---

7. We note in passing Lucas & Associates billed more time for the remand trial to determine attorneys' fees ($10,562.50) than it billed for the original trial on the merits concerning the injunction ($10,198.75).

8. Pavilion also argues it prepared a reply brief on appeal. There is no indication from the attorneys' time sheets that a reply brief was ever prepared, and, in fact, our rules of procedure do not provide an appellee, such as Pavilion, with the opportunity to do so. *See* Ind.Rules of Procedure, Appellate Rule 8.1(A).

*traordinary* cases because the amount arrived at in the traditional, acceptable manner—by multiplying a reasonable hourly rate times number of hours worked—is otherwise reasonable compensation for the attorney's work. *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (3d Cir.1973), 487 F.2d 161, 168–69. Thus, we believe the trial court, when confronted with the request for the use of the multiplier, must proceed with caution and require a proper record to support it. The evidence must be clear and convincing: In the case at hand, we have kept in mind that the evidence must be directed solely toward the appeal and not the trial fees because only Pavilion's appellate attorneys' fees were recoverable under Section 1988. Thus, each element of the multiplier should have been geared to appellate work. This was not the case here because Pavilion, for the most part, comingled its counsel's trial preparation and appellate services.[9] Keeping these factors in mind, we find the evidence did not exist to support a finding that this case or services were so extraordinary to warrant a double multiplier.

Therefore, we hold the trial court was in error in applying a multiplier to the lodestar figure, as well as in awarding the costs of printing the briefs to Pavilion. Reversed and remanded for entry of judgment consistent with this opinion.

YOUNG, P.J., and CONOVER, J., concur.

---

**9.** For instance, Lucas states in his affidavit "As a practical matter, individuals, hospitals, insurance carriers and others with an opposing view on abortion will never hire our law firm because of this case and others like it." There are no underlying facts presented which would support this bald assertion. This statement is not specific enough to indicate why an insurance company would not hire an otherwise qualified attorney as appellant counsel in order to brief legal issues as opposed to a local attorney in the trenches of litigation.